# EXHIBIT 1

James C. Shah (SBN #260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN #279834)
Email: kctang@millershah.com
**MILLER SHAH LLP**
8730 Wilshire Blvd., Suite 400
Los Angeles, CA 90211
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

[Additional Counsel in Signature Block]

*Attorney for Plaintiffs and the Putative Class*

Electronically FILED by
Superior Court of California,
County of Los Angeles
6/09/2025 3:08 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Nunez, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| SCOTT ADAIR, KENT HENDERSON, and TARRIS WALLACE, individually and on behalf of a class of similarly situated individuals, <br><br> *Plaintiffs,* <br><br> v. <br><br> AYLO USA INCORPORATED and AYLO GLOBAL ENTERTAINMENT, INC. <br><br> *Defendants.* | CASE NO: 25STCV16659 <br><br> **CLASS ACTION COMPLAINT FOR:** <br> 1. **Aiding and Abetting Unlawful Interception under the California Invasion of Privacy Act (Cal. Penal Code § 631);** <br> 2. **Invasion of Privacy (Art. 1, § 1, Cal. Const.); and** <br> 3. **Intrusion Upon Seclusion.** <br><br> **JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

## CLASS ACTION COMPLAINT

Plaintiffs Scott Adair, Kent Henderson, and Tarris Wallace ("Plaintiffs'), individually and on behalf of all other persons similarly situated as defined below, and based on personal knowledge where applicable, information and belief, and the investigation by counsel, allege the following against Aylo USA Incorporated and Aylo Global Entertainment, Inc. (collectively, "Aylo" or "Defendants").

## INTRODUCTION

1. This class action lawsuit arises from Defendants' decision to enable and facilitate the unauthorized interception of users' most intimate online communications. When users visit Defendants' website, www.pornhub.com ("Pornhub" or the "Website"), they reasonably expect their sensitive sexual preferences, orientations, and viewing habits to remain confidential. Instead, Defendants have embedded multiple third-party tracking technologies on their website—including Google Analytics 4, etahub.com, adtng.com, camschat.net and hotfree123.com (collectively, the "Trackers")—that allow these third parties to intercept, collect, and exploit users' most private data without knowledge or consent. In doing so, Defendants have transformed private sexual exploration into a source of commercial surveillance and behavioral profiling.

2. Defendants are part of the global "Aylo" (formerly known as "Mindgeek") pornography production and distribution conglomerate, with corporate roots in Canada and Cyprus. Both Defendants are involved in operating Pornhub, a pornography video-sharing website that is one of the world's largest adult entertainment websites. The site is ranked among the top 10 most browsed sites globally, with over 300 million visits and more than 2 billion pageviews each month in the United States alone. The Website allows its users to explore and view explicit content relating to their sexual identities, desires, and orientations.

3. Unbeknownst to users, however, each time a user visits Pornhub, Aylo enables the activation of the Trackers which surreptitiously intercept users' communications with the Website. These Trackers capture and transmit a host of highly sensitive and detailed personal information, including the titles of specific videos a user views, scene-level descriptors about

those videos (including the names of performers and explicit sexual acts featured), search terms entered, and sexual orientation-based category selections. Through the Trackers, this data is disclosed to the third-party operators of the Trackers, including Google (Google LLC/Alphabet Inc.) and adult advertising networks, often in connection with persistent identifiers like cookies that make it possible to link online behavior to identifiable individuals.

4. Critically, this tracking occurs without any affirmative consent. Pornhub's policies are hidden at the bottom of its webpages in inconspicuous hyperlinks never presented for agreement to unregistered visitors. As a result, unregistered users engaging with the site's content are unaware that their most intimate preferences are being recorded, shared, and monetized.

5. By embedding and enabling these Trackers on the Website, Aylo has violated California Penal Code § 631 of the California Invasion of Privacy Act, §§ 630, *et seq.* ("CIPA"), which prohibits not only direct interception of communications but also aiding, agreeing with, employing, or conspiring with any person to unlawfully intercept electronic communications. Aylo's conduct—intentionally embedding the Trackers and facilitating their operation for commercial purposes—renders it liable under California law.

6. In addition to claims under CIPA, Plaintiffs assert violations of the right to privacy enshrined in the California Constitution and bring a common law claim for intrusion upon seclusion. Each of these legal frameworks recognizes the uniquely sensitive nature of the data at issue and the serious intrusion caused by its unauthorized interception and disclosure

7. CIPA provides users whose privacy has been breached with the right to recover statutory damages of $5,000 per violation, plus attorney's fees and costs. Plaintiffs bring this claim to achieve redress on behalf of themselves and other California citizens who were similarly injured by Aylo's unlawful conduct.

**PARTIES**

8. Plaintiff Scott Adair is an individual residing in Oxnard, California. He has accessed www.pornhub.com on one or more occasions during the relevant statutory period.

9. Plaintiff Kent Henderson is an individual residing in Redondo Beach, California. He has accessed www.pornhub.com on one or more occasions during the relevant statutory

CLASS ACTION COMPLAINT                -3-

period.

10.     Plaintiff Tarris Wallace is an individual residing in Fairfield, California. He has accessed www.pornhub.com on one or more occasions during the relevant statutory period.

11.     Defendant Aylo USA Incorporated is a limited liability corporation incorporated in Delaware with its principal place of business at 610 Brazos St, Suite 500 Austin, Texas 78701. Defendant Aylo USA Incorporated is also registered in California as an out-of-state corporation in good standing. Defendant Aylo USA Incorporated operates the Website.

12.     Defendant Aylo Global Entertainment, Inc. is a limited liability corporation incorporated in Delaware with its principal place of business at 610 Brazos St, Suite 500 Austin, Texas 78701. Defendant Aylo Global Entertainment, Inc. operates the Website.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action under Article VI, Section 10 of the California Constitution; CIPA, Cal. Penal Code § 638.51; and Cal. Code Civ. Proc § 410.10. This action is brought as a class action on behalf of Plaintiffs and Class members (defined below) under Cal. Code Civ. Proc. § 382.

14.     This Court has personal jurisdiction over the parties because Defendants have sufficient minimum contacts with this State in that they operate and market the Website to and for California residents throughout the State.  Defendants target advertisements to consumers in California and a substantial share of the unique, U.S.-based visitors to the Website reside in California.  Defendants also host, sponsor, and attend regular marketing events in California for purposes of promoting the Website.

15.     Venue is proper in this Court because Code of Civil Procedure §§ 395 and 395.5 and case law interpreting those sections provide that, if a foreign business entity fails to designate a principal place of business in California with the office of the California Secretary of State, it is subject to being sued in any county that a plaintiff desires. On information and belief, Defendants are foreign business entities and, as of the date this Complaint was filed, had failed to designate a principal place of business in California with the office of the California Secretary of State. Defendant's registered agent for service of process in California is located in Glendale,

CLASS ACTION COMPLAINT                    -4-

California.

## FACTUAL ALLEGATIONS COMMON TO THE CLASS

### A.    Website Tracking Technology

16.    When a user visits a website, their web browser must communicate with the website's server to load the page content. This communication happens through a "HTTP request" or "GET" request sent from the user's browser to the website's server. The server then responds with a "HTTP response" containing instructions for displaying the webpage, including what text should appear and where, what images should load, and what music should play. A general diagram of the process is shown below:



17.    During this process, the server's HTTP response process may also cause trackers and tracking software to be installed on a user's browser. The trackers and tracking software are invisible pieces of code that can cause the browser to send information to a third party, including the user's IP address and details about the user's device (make, model, operating system), location information, browser information, and other persistent identifiers.

18.    If the same third-party tracker or tracking software is present across multiple websites, it can build a comprehensive profile of users by combining data from different sources. This enables sophisticated tracking of individuals' browsing habits, preferences, and behaviors across the internet.

19.    Businesses often incorporate these third-party tracking technologies into their websites' codes for various purposes, including for: collecting and analyzing user data; monitoring website interactions; enabling targeted advertising; measuring advertising

CLASS ACTION COMPLAINT          -5-

effectiveness; and generating revenue through data sharing and targeted advertising.

20. In order to incorporate third-party tracking technologies into their websites and obtain these benefits, the owner of a website like Pornhub will often add or embed a small piece of JavaScript measurement code corresponding to a tracker into each page of its site. Once implemented, the code loads automatically and immediately whenever a user visits a page containing the code. The tracking codes execute in the background without any visible indication to the user, making it completely invisible to ordinary website visitors. Only users with technical knowledge who deliberately inspect the page's source code or use specialized browser tools might detect the presence of these tracking mechanisms and the interception of their communications by third parties. The surreptitious nature of the tracker means that users typically have no idea that their electronic communications are being intercepted.

21. Another way that trackers, tracking codes and tracking software typically operate is through the installation of cookies on users' browsers. A cookie is a small text file containing data that a website's server creates and transmits to a web browser, which then stores the file on the user's device. When a user revisits a website, the tracker and tracking software can access the information stored in the cookie, allowing it to recognize the user, thereby helping the tracker or tracking software to continue building their profile. These cookies can persist from a few days to several years, enabling long-term tracking and profiling.

22. The installation and operation of trackers and their related cookies occurs automatically and invisibly when users visit websites. Users are typically unaware that their data is being collected and transmitted to third parties or that information is being stored on their device though cookies, as the processes happen in the background without any visible indication.

**B. Aylo Has Installed Trackers on Pornhub that Intercept Users Communications**

23. Aylo has embedded the various third-party Trackers on the Website which collect and transmit users' private and highly sensitive information without their knowledge or consent, including alongside persistent cookie identifies that can be linked to a person's identity and browser information.

*i. Google Analytics*

24.    Aylo embedded Google Analytics 4, a web tracking platform owned by Google, into the Website. Google Analytics operates as a third-party tracking script that intercepts and transmits detailed user interactions to Google for advertising, profiling, and marketing optimization purposes.

25.    Google markets Google Analytics 4 as a platform that offers "a complete understanding of your customers across devices and platforms" to "uncover new insights and anticipate future customer actions with Google's machine learning to get more value out of your data."[1]  Google Analytics 4 collects data from a website or application to create shareable reports that provide insights into a website, and is designed to work together with other Google solutions to provide a company with a complete understanding of its marketing efforts and enhance performance.

26.    Like the Adtng and Etahub trackers, the owner of a website like Pornhub can install Google Analytics 4 on its website by adding or embedding a small piece of JavaScript measurement code into each page of its site. When users access Pornhub, Google Analytics 4 executes automatically and invisibly in the user's browser. Aylo has installed Google Analytics 4 on Pornhub.

27.    Once activated, the Google Analytics 4 tracker intercepts, reads and analyzes various data points about user communications with a website, known as "events."  These events include page views, links the user has clicked, form submissions, video plays, file downloads, and custom events defined by the website owner. The Google Analytics 4 tracker intercepts these events and transmits them to Google's servers in real time as they occur.

28.    On the Website, the events which Google Analytics 4 intercepts, reads and analyzes include a range of highly sensitive and identifying information, including: (1) specific video titles a user has selected and played; (2) any sexual orientation categories navigated (*e.g.*, transgender, gay, bisexual); (3) explicit and detailed scene-specific attributes of the videos (such

_____

[1] *Analytics*, Google Marketing Platform, https://marketingplatform.google.com/about/analytics/ (last visited May 30, 2025).

CLASS ACTION COMPLAINT          -7-

as the presence of named pornographic performers, the production type (*e.g.*, "amateur," "homemade" or "doggy style"), or whether the video was made in a specific country (*e.g.*, "Japan"); (4) any search terms entered by the user into the Website search bar, including even sensitive queries like "Asian teen girl" or "young black teens" (Pornhub presents users with a "warning" notification for these terms; but even if a user ultimately chooses not to proceed with viewing the search results, the search terms are still shared with Google); and (5) details about products viewed or purchased on the Website's online shop, including item categories, names, and price.

29.    The image below is a screenshot showing the information that is immediately transmitted to Google through the Google Analytics 4 tracker when a user visits the Pornhub home page for the first time (www.pornhub.com). The information includes the fact that the user visited the site "www.pornhub.com," and that the user is browsing pornography relating to the "straight" sexual orientation:

30.    The image below is a screenshot showing an example of the information that is transmitted to Google through the Google Analytics 4 tracker when the user clicks to view videos relating to the "MILF" category. Google receives information that the user is browsing a page relating to categories featuring "Milf Porn Videos Free Hot Mature Milf Sex Movies," that the user clicked to visit this page from the homepage, and that the user is browsing pornography relating to the "straight" sexual orientation:

31.    The image below is a screenshot showing an example of the information that is transmitted to Google through the Google Analytics 4 tracker when a particular video is viewed on Pornhub. The information includes the highly explicit name of the video, the fact that the video is directed towards a "Straight" sexual orientation, features a "Transgender" segmentation,

that the video is "Homemade," features an "Amateur Model," that the video was uploaded by "joraandkonny," that the video is not from Japan, the date the video was published (2024/03/11), its duration (12 minutes), and that the English language is spoken in the video.

32.    The image below is a screenshot showing an example of the information that is transmitted to Google through the Google Analytics 4 tracker when a user enters a search term in the search bar. The information includes the fact the user was conducting a video search, the search terms (here, "young black teens"), the fact that a warning was displayed (even though the user here clicked to ignore the warning and view the search results), and the fact that the user was searching for pornography relating to the "straight" sexual orientation:

CLASS ACTION COMPLAINT                -10-

33. The first image below is a screenshot showing what a Pornhub user sees when they view their cart having clicked to purchase a "Turbo G-Spot Vibe" sex toy for $40.00. The second image is a screenshot showing the information that is transmitted to Google through the Google Analytics 4 tracker when a user takes this action. It includes the name of the product ("Turbo G-Spot Vibe"), the fact that the user clicked "add to cart" on the product, and the value (or price) of the product.





34. Each of the event transmissions also include information about the user's browser, such as the language setting, the type of browser and the device and operating system on which the browser is running. It can even collect and record the "traffic source," which is what brought the user to the site in the first place, such as a search engine, an advertisement on which the user clicked, or an email marketing campaign.[2]

---

[2] *How Google Analytics Works*, Google Analytics Help, https://support.google.com/analytics/answer/12159447?hl=en&ref_topic=12156336,12153943,2986333,&sjid=47843035158057002-NA&visit_id=638186454308763581-3109655727&rd=1 (last visited May 30, 2025).

CLASS ACTION COMPLAINT                -12-

35. When a user accesses Pornhub while logged into a Google Chrome browser or signed into their Google Account (such as Gmail or YouTube), Google assigns unique identifiers to that session through third-party cookies including 3PSID, 3PAPISID, and 3PSIDCC. These cookies are set by Google services (such as google.com) and are explicitly tied to the user's logged-in Google account. The values of these cookies are unique to each account holder and persist across sessions and devices as long as the user remains signed in.

36. When creating a Google account, users are required to provide an email address, meaning that data collected alongside the 3PSID, 3PAPISID, and 3PSIDCC cookies (such as Pornhub video selections, search terms, and orientation-based category navigation) can be linked by Google to an identifiable email address. Many users, however, also voluntarily provide additional identifying information to Google such as their full name, phone number, home address, work address, profile photograph, and recovery email – either during account creation or while using other Google services. As a result, Google can associate the data collected alongside the cookies not only with an email address, but with a named and potentially highly personalized user profile. This enables Google to link a user's private activity on Pornhub to their name and broader aspects of their digital identity, particularly when combined with other data collected across Google's ecosystem, such as Gmail usage, YouTube views, or Google Maps history.

37. For users who are not signed into a Google account, Google sets a different type of cookie known as the NID cookie. The NID cookie is tied to the user's browser rather than to a named account. It still contains a unique identifier that persists for approximately 6 months, unless a user manually "clears" their cookies (upon which Google will automatically generate a new, unique identifier associated with the NID cookie.) The NID cookie enables Google to track user preferences, browsing behavior, and ad interactions across websites that use Google Analytics or serve Google Ads. While the NID cookie does not reveal a named account identity, it still allows Google to build behavioral profiles and serve personalized advertisements based on a user's activity, including activity on Pornhub. Google's Privacy Policy expressly acknowledges its practice of tracking users, even when they are not logged in, via sites that have

CLASS ACTION COMPLAINT           -13-

installed Google Analytics 4. Per Google's own statement: "[w]hen you're not signed in to a Google Account, we store the information we collect with unique identifiers tied to the browser, application, or device you're using. This allows us to do things like maintain your preferences across browsing sessions, such as your preferred language or whether to show you more relevant search results or ads based on your activity."[3]

38.    In both scenarios, whether the user is signed in or not, Google receives highly sensitive data from Pornhub and links that data to persistent identifiers, either account-based or browser-based. As a result, the information Aylo facilitates Google in collecting can be used to construct detailed, individualized profiles of users' sexual behavior and preferences. These profiles are either directly tied to a real-world identity or are associated with a stable device or browser fingerprint capable of long-term behavioral tracking.

39.    Once Google intercepts and processes the raw user data about "events," which may include personal and sensitive health-related information, it uses the cookies to associate this data with unique user identifiers. Google can then use these unique user identifiers to link website interactions to individual user profiles and track users across multiple different websites, sessions, and devices when the user is signed into their Google accounts. After the data has been processed and subsequently stored in the Google database, Google uses the data to generate reports to help analyze the data intercepted. Those reports include reports on acquisition (*e.g.*, information about where the traffic originated and the methods by which users arrived at a site), engagement (what web pages a user visited), and demographics (a user's age, location, language, gender, and interests expressed when browsing online and engaging in purchase activities).

40.    Importantly, Google Analytics 4 offers a "non-personalized ads" feature, which allows websites to use general data and site context for ad targeting, instead of individual user information. However, Aylo has chosen not to enable this option on the Pornhub Website. In Pornhub's case, the "npa" (non-personalized ads) field is set to "0," meaning that personalized ads are enabled. Each user interaction on the site is recorded as an "event." When the "npa" value

---

[3] *See* https://policies.google.com/privacy/embedded?hl=en-US (Last accessed May 22, 2025).

is set to "1," the data can only be used for internal purposes and cannot be shared with Google Ads for targeting. Because Aylo set the "npa" value for Pornhub to "0," all intercepted user communications from Pornhub can be used for personalized advertising purposes. On information and belief, this choice represents an active decision by Aylo to maximize the commercial exploitation of Pornhub users' private communications data.

41.    The image below is a screenshot of the technical settings relating to the Google Analytics 4 tracker that Aylo has installed on the Pornhub homepage, which shows that the "npa" value is set to "0."



42.    Accordingly, Aylo has not only failed to disable the personalized ad function, but enables the profiling of users based on their most private sexual preferences and behaviors. The user data collected is transmitted to Google for both analytics and advertising purposes. Once received, Google uses the data to generate reports for Aylo (such as user acquisition reports, engagement metrics, and demographics), and to augment its own commercial datasets. These may include data on user age, language, gender, browsing interests, and geographic location.

43.    The information Aylo allows to be disclosed to Google through its tracking platforms can be used to identify a specific user, record and redirect their communications containing PII and sensitive information about sexual preferences, and then monetized through

CLASS ACTION COMPLAINT                    -15-

advertising.

44.     Google uses all the information it collects through Google Analytics and integrates it with Google Ads, allowing Google to utilize, and improve, targeted advertising. Then, by tracking user behavior across different websites, Google can improve its targeted advertising, leading to higher click-through rates and, thus, more ad revenue.

45.     Aylo also directly benefits from sharing users' private information. Because Aylo shares this private information with Google, Google allows Defendants to improve their marketing by permitting them to track Pornhub visitors when they go to other websites, at which time Aylo can send direct, targeted ads.

### ii.     The Adtng Tracker

46.     Aylo has also embedded the Adtng tracker, which transmits to the domain adtng.com and is primarily associated with adult advertising networks, into the Website. Aylo has embedded the JavaScript code associated with Atdng tracker into the Pornhub Website in order to monitor user behavior and deliver targeted advertisements, especially in the context of sexually explicit content.

47.     When users access Pornhub, the Adtng tracker executes automatically and invisibly in the user's browser. It intercepts user communications with the Website in real time; it collects, reads, and analyzes the user's communications with Pornhub in real time and while in transit with Pornhub for its advertising and analytics purposes. The data transmitted to Adtng includes not just general categories of content but highly specific and explicit details about the videos users view.

48.     For example, and as shown in the image below, when a user clicks to watch a video entitled "You Sure There's Nothing Else I Can Help You Service?" on Pornhub, Adtng transmitted, at the moment the video was selected, approximately 23 different descriptive keywords to its servers. The image below is a screenshot showing the keywords transmitted to Adtng by the tracker. The keywords include technical details (*e.g.*, "HD porn"), the sexual orientation the video is intended for ("gay"), scenario descriptors of the video (*e.g.*, "reality," "handyman"), the names of the performers in the video, physical attributes of the performers

CLASS ACTION COMPLAINT                 -16-

(*e.g.*, "hairy chest," "uncut"), and highly explicit descriptions of the actions in the video (*e.g.*, "deepthroat," "handjob"). This level of detail effectively creates a comprehensive profile of the user's exact sexual interests and preferences, far beyond what users would reasonably expect to be shared with third parties.



49.    All of this video information is collected, read and analyzed in tandem with other device and session-specific information, including browser and device details, and cookies that the Adtng tracker sets on the user's device. The Adtng tracker uses these cookies to create persistent identifiers that can associate browsing sessions across multiple visits to Pornhub.

50.    Adtng's use of cookies—alongside the capture of browser and device characteristics—enables it to associate browsing sessions with a persistent identifier. This allows Adtng to track users across different sessions, linking different browsing sessions to the same user profile. Through this mechanism, Adtng is capable of creating a comprehensive, longitudinal profile of a user's Pornhub viewing habits over time.

CLASS ACTION COMPLAINT              -17-

51.     Furthermore, because Adtng's tracking script may be deployed across other websites—including other adult platforms—it is able to associate and combine data collected from Pornhub with information from those sites. This cross-site tracking allows Adtng to build comprehensive behavioral profiles tied to specific devices and cookies.

52.     The data collected by Adtng constitutes personally identifiable information, as it uniquely identifies individual browsers and facilitates persistent tracking of their users across sessions and websites through cookie-based identifiers.

53.     On information and belief, Aylo has installed the Adtng Tracker on Pornhub to enhance its marketing and advertising capabilities. By collecting detailed information about the users' interactions with the Website and the videos they watch, alongside tracking them through unique identifier cookies, Adtng can target these users with advertisements when they access other websites (including pornographic websites) that feature the Adtng tracker.

54.     On information and belief, Aylo also receives analytics or segmentation insights from Adtng's platform, including behavioral breakdowns of users' preferences. These insights may be used to optimize Aylo's ad placement strategies—such as targeting users with advertisements aligned to their prior Pornhub viewing preferences. On information and belief, the operator of the Adtng tracker also receives similar benefits and insights.

55.     In prioritizing its commercial interests over user privacy, Aylo has knowingly facilitated the unauthorized transmission of deeply sensitive and identifying information to third-party advertising entities.

       *iii.    The Etahub Tracker*

56.     Another third-party tracker embedded on Pornhub is the Etahub tracker, which transmits to the domain etahub.com, a domain primarily associated with adult advertising and behavioral tracking. Like the Adtng tracker, the Etahub tracker is tailored to monitor interactions with sexually explicit content and facilitate targeted advertising based on user engagement.

57.     Aylo has embedded the JavaScript code associated with the Etahub tracker into the Website. When users access Pornhub, Etahub's tracking script executes automatically and invisibly within the user's browser. It intercepts user communications with the Website in real

CLASS ACTION COMPLAINT                -18-

time—reading, analyzing, and transmitting the contents of those communications while they are in transit to and from Pornhub's servers for its advertising and analytics purposes.

58.  The data transmitted to Etahub includes not just general categories of content but highly specific and explicit details about the videos users view. For example, as shown in the image below, when a user clicks to watch a video on Pornhub entitled "stepmother," Etahub transmitted, at the moment the video was selected, approximately 25 different descriptive keywords to its servers. The image below is a screenshot showing the keywords transmitted to Etahub by the tracker. The keywords include technical details (*e.g.*, 60fps, HD), categories (*e.g.*, "milf," "stepson"), physical attributes of the female performer in the video (*e.g.*, "big booty"), and highly explicit scene descriptions (*e.g.*, "POV oral," "doggy style," and "bikini sex"). This level of detail effectively creates a comprehensive profile of the user's exact sexual interests and preferences, far beyond what users would reasonably expect to be shared with third parties.



59.  In addition to this video-specific data, Etahub captures a range of device-specific information that can create a device profile, including browser types, operating systems, and

CLASS ACTION COMPLAINT                -19-

device characteristics. The combination of these technical identifiers creates a form of "browser fingerprint" that can be used to recognize returning visitors to Pornhub and potentially across other websites where the Etahub tracker is present.

60.     Etahub's data collection practices are not confined to Pornhub alone. Because the Etahub tracking script may be embedded on other websites—particularly other adult platforms— it can combine data collected from Pornhub with additional information gleaned from users' visits to other websites. This enables cross-site tracking, allowing Etahub to build sophisticated behavioral profiles tied to particular devices, even without cookie-based identifiers.

61.     The data collected by Etahub constitutes personally identifiable information because it uniquely identifies user browsers and enables persistent behavioral tracking over time. Its ability to track users based on the combination of device-level signals significantly enhances the granularity of its profiling.

62.     On information and belief, Aylo has deployed the Etahub tracker to enhance its own advertising and marketing capabilities. By transmitting sensitive user interaction data— alongside technical identifiers—to Etahub, Aylo facilitates the segmentation and retargeting of Pornhub users through external ad networks.

63.     On further information and belief, Aylo receives analytic or strategic insights from Etahub, including behavioral data that can be used to refine Aylo's advertising tactics. For example, Aylo may use such insights to identify clusters of users with similar viewing preferences and target those users with tailored advertisements based on previously viewed content categories. On information and belief, the operator of the Etahub tracker also receives similar benefits and insights.

64.     Through the deployment of the Etahub tracker, Aylo has prioritized its commercial objectives over the privacy of its users, knowingly enabling the unauthorized interception and disclosure of deeply personal and identifying information to a third-party tracker designed specifically for the adult advertising ecosystem.

*iv.     Other Third-Party, Pornography-Related Trackers*

65.     In addition to Adtng, Etahub and Google Analytics, Aylo has enabled the

CLASS ACTION COMPLAINT                -20-

interception of highly specific user information on Pornhub by other pornographic websites, including through trackers associated with camschat.net, an online sexual chat platform, and hotfree123.com, a video content site. These trackers are associated with adult entertainment ecosystems and appear to receive detailed telemetry related to user behavior on Pornhub.

66.     When a user watches a video on Pornhub, third-party trackers are initiated in the background that transmit video-specific metadata to these external sites. The detailed information that these sites collect, read and analyze may include keyword details about the pornographic videos viewed (such as resolution or video format), categorical information about the videos (e.g., "MILF," "taboo," "amateur"), and scene descriptions about the videos (e.g., "POV oral," "doggy style").

67.     The image below is a screenshot showing the information that is transmitted to camschat.net when a user watches a video on the Website.



68.     The image below is a screenshot showing some of the information that is transmitted to hotfree123.com when a user watches a different video on the Website.



69.     These transmissions occur in real time as the user interacts with the site. Although these third parties may not receive cookie-based identifiers, they do receive browser-level information as part of the communication exchange. This includes browser type, language setting, user agent string, and in some instances, referrer URLs—all of which can be used for fingerprinting techniques that help track or group user activity.

70.     This cross-platform sharing of sensitive information serves several commercial purposes. First, it facilitates content recommendation and ad placement across affiliated adult platforms. Second, it enables these third-party sites to build intelligence about viewing preferences and popular content categories. Third, it creates a network effect where a user's activity on Pornhub may influence the content or advertisements they are shown on these other platforms, should they visit them.

71.     Even without traditional personally identifiable information such as IP addresses or cookies, the combination of detailed browser information with specific viewing histories creates a form of "behavioral fingerprinting" that can be used to recognize returning visitors across platforms. This enables Aylo and its network of affiliated adult sites to develop increasingly sophisticated profiles of user preferences and behaviors within the adult content

CLASS ACTION COMPLAINT                    -22-

ecosystem.

**C.    Plaintiffs And Class Members Did Not Consent To Defendants' Disclosure Of Their Private Information And Confidential Communications**

72.    At no point did Plaintiffs or Class members consent to Aylo's disclosure of their private information or electronic communications with Pornhub to third parties, including, but not limited to, Google, Adtng, Etahub, and other adult content tracking platforms.

73.    Pornhub users are not required to create an account in order to access the Website or view video content on it, including pornographic video content. Pornhub users who browse the site without creating an account are not presented with any clear or conspicuous notice that their viewing behavior, search terms, video selections, sexual orientation categories, or device identifiers will be shared with external analytics or ad tracking services. Nor are they required to affirmatively accept any privacy policy or terms of use before accessing the site.

74.    Although Pornhub does have a Privacy Policy containing some disclosures about how users' communications are shared or intercepted by Trackers, that policy can be viewed only after scrolling through all the Website content to the very bottom of the webpage, long after the Trackers have been installed on users' browsers. The hyperlink to access the Privacy Policy is listed in small text among numerous other links at the bottom of the page. Users who have not registered for a Pornhub account, such as a "Pornhub Premium" account, never affirmatively agree to the Privacy Policy. There are no pop-ups, banners, or interstitial pages that prompt unregistered users to review or accept the Privacy Policy before accessing content on the Website.

75.    Aylo's failure to obtain meaningful consent from unregistered Pornhub users is particularly egregious given the highly sensitive and private nature of user communications on Pornhub. Information about an individual's sexual preferences, orientation, and viewing habits is among the most intimate and personal data that exists. Such information is fundamentally different from general browsing data or purchase history, and requires a higher standard of notice and explicit consent before it can be lawfully intercepted and disclosed to third parties.

CLASS ACTION COMPLAINT                -23-

**D.      Plaintiffs and Class Members Have A Reasonable Expectation Of Privacy In Their User Data**

76.      Plaintiffs and Class members have a reasonable expectation of privacy in their user data—particularly the types of data that Aylo orchestrates disclosure of through the Trackers it installs on the Website. The expectation of privacy takes on heightened significance when it comes to online pornography consumption, representing some of the most intimate and personal data that can be collected about an individual. Sexual preferences and interests are fundamentally individualized expressions of a person's identity, reflecting deeply personal aspects of one's psychology and self-conception. Unlike many other online activities, viewing pornography involves engaging with content that reflects one's most private desires, often including aspects of sexuality that individuals may not express in their public or even with their intimate partners.

77.      The digital era has transformed how people explore these individualized sexual preferences. Unlike the pre-internet era, when accessing adult content was mostly limited to physical media like magazines or DVDs that could be privately purchased and consumed without tracking, today's online pornography ecosystem enables the precise documentation of a user's sexual interests through their viewing patterns, search queries, and content selections. The internet's vast array of adult content—categorized by countless specific attributes, acts, body types, performers, scenarios, and orientations—allows users to discover and engage with material that precisely aligns with their unique sexual preferences in ways never before possible.

78.      This individualization of pornography consumption creates digital footprints that are exceptionally revealing and intimate. When a person repeatedly searches for or views specific categories, scenarios, or attributes within pornographic content, these patterns can reveal highly personal information about their sexual preferences, fantasies, desires, and potentially even their sexual orientation or gender identity. For example, a Pornhub user's regular viewing of videos featuring homosexual pornography may make it possible to draw inferences (although inconclusively) about that user's sexual orientation. And a Pornhub user's consistent viewing of specific gender combinations, power dynamics, or physical attributes in pornographic content creates a detailed profile of their sexual psyche, information so private that many individuals do

not share it even with partners or spouses.

79. The intensely personal nature of pornography consumption and these individualized preferences is demonstrated by the fact that many users take affirmative steps to preserve their anonymity, such as using "private browsing" or "incognito" browsing modes or clearing their browser history when accessing pornographic websites. But those protective measures are ineffective against the technologies Aylo has implemented. Trackers embedded in the Website can operate regardless of whether a user is in private mode, collecting and transmitting the highly sensitive data along with browser details, and persistent identifiers such as the NID cookie to third parties in real time. The result is a profound violation of privacy: even users who took specific steps to protect the confidentiality of their most intimate preferences still had their individualized sexual interests intercepted and disclosed to third parties without their knowledge or consent.

80. The average unregistered Pornhub user would have no reason to suspect that their interactions with the Website would trigger the activation of multiple third-party trackers that intercept and transmit detailed information about their viewing habits, search terms, and engagement with specific categories of sexual content. Nothing about the design or operation of the Website would lead an unregistered user to expect that: (1) their search for specific categories of adult or pornographic content would be transmitted to the owners of the Trackers (such as Google) in real-time; (2) a profile of their sexual interests would be developed using persistent identifiers that could be linked to their identity; (3) their browsing of specific sexual orientation categories would be tracked and shared with adult advertising networks; (4) their viewing of specific video content would be transmitted to third parties along with detailed categorization and scene descriptions; or (5) their browser and device information would be captured alongside this sensitive content information, allowing for potential re-identification across multiple websites.

81. Privacy studies, such as those by *Pew Research Center*, show that a majority of

Americans are concerned about how data is collected about them.[4]  Those privacy polls also reflect that Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares data regarding that customer or other individual.

82.    Indeed, according to *Consumer Reports*, more than 90% of Americans believe that more should be done to ensure that companies protect consumers' privacy.  Further, 64% of Americans believe that companies should be prohibited from sharing data with third parties, while 63% of Americans want a federal law requiring companies to get a consumer's permission before sharing the consumers' information.  To that end, 60% of Americans believe that companies should be required to be more transparent about their privacy policies so that consumers can make more informed choices.[5]

83.    Users act in a manner that is consistent with those preferences.  During a rollout of new iPhone operating software, for example, 94% of U.S. users who were asked for clear, affirmative consent before allowing companies to track them chose ***not*** to share their data.[6]

84.    Due to the highly intimate and sensitive nature of the information users input onto and share on Pornhub, Plaintiffs and Class members who used the Website reasonably believed and believe that their interactions and private communications with Pornhub were and are confidential and would not be recorded, transmitted to third parties, or monitored for later use. Defendants' unauthorized disclosure of highly personal information and owners of the Trackers' surreptitious interception, storage, and use of Plaintiffs' and Class members' private medical

---

[4]  Brooke Auxier et al., *Americans and Privacy: Concerned, Confused and Feeling Lack of Control Over Their Personal Information*, Pew Research Center (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information/

[5]  Benjamin Moskowitz et al., *Privacy Front & Center: Meeting the Commercial Opportunity to Support Consumer Rights*, Consumer Reports in collaboration with Omidyar Network (Fall 2020), https://thedigitalstandard.org/downloads/CR_PrivacyFrontAndCenter_102020_vf.pdf

[6] *See* https://www.wired.co.uk/article/apple-ios14-facebook ("According to Flurry Analytics, 85 per cent of worldwide users clicked 'ask app not to track' when prompted, with the proportion rising to 94 per cent in the US.").

information violate Plaintiffs' and Class members' privacy interests and rights.

**PLAINTIFFS' EXPERIENCES**

85.    Plaintiff Scott Adair has visited the Website on a regular basis for the last several years. Plaintiff Adair typically access the Website via the Google Chrome browser on his laptop computer in or near his home in Oxnard, CA.

86.    Plaintiff Kent Henderson has visited the Website on a regular basis for the last several years. Plaintiff Henderson typically access the Website via the Google Chrome browser on his Samsung Galaxy mobile device in or near his home in Redondo Beach, CA.

87.    Plaintiff Tarris Wallace has visited the Website on a regular basis for the last several years. Plaintiff Wallace typically access the Website via the Google Chrome browser on his laptop computer and Motorola smartphone in or near his home in Fairfield, CA.

88.    Neither Plaintiff Adair nor Plaintiff Henderson utilized "incognito" mode on their Google Chrome browsers while visiting the Website. Plaintiff Wallace occasionally utilized "incognito" mode on his Google Chrome browser when visiting the Website, and other times he did not.

89.    During the period they were visiting the Website, Plaintiffs' Google accounts contained their personal identifying information including, *inter alia*, first and last name, date of birth, email address, telephone number, and physical address.

**CLASS ACTION ALLEGATIONS**

90.    Plaintiffs bring this action on behalf of themselves, individually, and on behalf of all others similarly situated as a class action on behalf of the following class (the "Class"):

> All California residents who are not or have never been registered Pornhub account holders, and whose electronic communications with the Pornhub Website were intercepted by Google or other third-party tracking technologies implemented on the Pornhub Website within the applicable statute of limitations.

91.    Excluded from the Class are employees of Defendants and employees of Defendants' parents, subsidiaries, and corporate affiliates; any judge to whom this case is assigned; and any jurors assigned to this case. Plaintiffs reserve the right to redefine the Class

CLASS ACTION COMPLAINT          -27-

and/or divide the Classes into subclasses at, or prior to, the class certification stage; in response to discovery or further investigation; or pursuant to instruction by the Court.

92.    **Numerosity:** The Class that Plaintiffs seek to represent contains numerous members, estimated to be in the hundreds of thousands, meaning that joinder of all members is impracticable. Given Pornhub's reported 300 million monthly visits in the United States and the frequency of page interactions, Aylo may have facilitated privacy violations against hundreds of thousands or millions of California residents. The Class members are also clearly ascertainable including, without limitation, by using Aylo's records and/or Google's records to determine the size of the Classes and to determine the identities of individual Class members.

93.    **Commonality and Predominance**: There is a well-defined community of interest and common questions of law and fact that predominate over any questions affecting only individual members of the Class. These common questions include:

(a)    Whether Plaintiffs and Class members had a reasonable expectation of privacy in the contents of their communications with the Website;

(b)    Whether Aylo implemented the Trackers on its Website;

(c)    Whether Aylo aided, abetted or procured the interception and disclosure of Plaintiffs' and Class member's communications with the Pornhub by installing or embedding the Trackers on its Website;

(d)    Whether Aylo's aiding, abetting or procuring of the interception and disclosure of Plaintiffs' and Class member's communications with the Pornhub by installing the Trackers on its Website was highly offensive;

(e)    Whether the Trackers' interception of Website users' communications with Pornhub occurred as the communications were taking place;

(f)    Whether Aylo intruded upon Plaintiffs' and Class member's seclusion by embedding the Trackers on the Website and sharing their communications without their consent;

(g)    Whether Aylo violated Plaintiffs' and Class members' privacy rights, including those arising under the California Constitution;

(h)    Whether Aylo's acts and practices violate or violated the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.*;

(i)    Whether Plaintiffs and Class members are entitled to injunctive and equitable relief; and

(j)    Whether Plaintiffs and Class members are entitled to actual, statutory, nominal, and/or other forms of damages and other monetary relief.

CLASS ACTION COMPLAINT            -28-

94.    **Typicality:** Plaintiffs' claims are typical of the members of the Class, as Plaintiffs now suffer and have suffered from the same violations of the law as other putative Class members.  Plaintiffs and all members of the Class visited the Website, were subject to the same Trackers installed in the Website by Aylo, and had the same types of sensitive information sent to the owners of the Trackers, including Google, without their consent. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other Class members and are based on the same legal theories.

95.    **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interests of the Class.   Plaintiffs have retained competent counsel with substantial experience in prosecuting complex litigation and class actions.  Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and their members and have the financial resources to do so.  Neither Plaintiffs nor their counsel have any interests that are adverse to those of the other members of the Class.

96.    **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all of the members of the Class is impracticable and because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.  Even if every individual member of the Class could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts if individual litigation of the numerous cases were to be required.  Individualized litigation also would present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, the conduct of this action as a class action with respect to some or all of the issues will present fewer management difficulties, conserve the resources of the court system and the parties, and protect the rights of members of the Class.  Further, it will prevent the very real harm that would be suffered by numerous members of the putative Class who simply will be unable to enforce individual claims of this size on their own. The prosecution of individual actions by members of the Classes also would run the risk of establishing inconsistent standards of conduct for

CLASS ACTION COMPLAINT              -29-

Defendants.

## FIRST CAUSE OF ACTION

**Aiding and Abetting Unlawful Interception**
**(Violation of California Penal Code § 631)**
**(Plaintiffs Individually and on Behalf of Class Members)**

97.     Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

98.     The California Legislature enacted the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq*., to address "advances in science and technology [that] have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." *Id*. § 630. CIPA is intended "to protect the right of privacy of the people of this state." *Id*.

99.     To establish liability under section 631(a), Plaintiffs need only establish that Defendants, "by means of any machine, instrument, or contrivance, or in any other manner," did or does any of the following:

"[i] [I]ntentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

Or

[ii] [W]illfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

Or

[iii] [U]ses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

Or

[iv] [A]ids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section."

CLASS ACTION COMPLAINT                     -30-

100.    Under § 631, a defendant must show that it had all parties' consent.

101.    Defendants are each a "person" for the purposes of CIPA.

102.    The Trackers, Plaintiffs' and Class members' web browsers, and Plaintiffs' and Class members' computing and mobile devices are "machine[s], instrument[s], or contrivance[s]…or other manner."

103.    At all relevant times, Defendants installed and activated third-party Trackers, including Google Analytics 4 and other third-party tracking technologies, on Website. These Trackers intercepted communications between Plaintiffs (and Class members) and the Website, without their consent, and while those communications were in transit.

104.    By enabling and facilitating these Trackers, Aylo intentionally aided, agreed with, and employed third parties (including Google and the operators of the other third-party Trackers) to willfully intercept, read or attempt to read, and use the contents of users' communications with the Website. These communications included highly sensitive data such as users' search queries, video selections, category navigation, and identifiers.

105.    These third-party entities used the intercepted communications to enhance their advertising and analytics products, including profiling users, measuring ad effectiveness, and expanding commercial datasets.

106.    Plaintiffs and Class members did not consent to these interceptions. At no time were they notified that their communications—including deeply private details about their sexual interests—would be transmitted to third parties.

107.    At all relevant times, Defendants willingly facilitated, aided, employed, agreed with, procured and conspired with unauthorized third parties to track and intercept Plaintiffs' and Class members' personal and private communications made via the Website.    These communications were transmitted to and intercepted by third parties while the communications were in transit, and were not authorized or consented to by Plaintiffs and Class members. Accordingly, the interception by the Trackers was unlawful and Defendants aided and abetted the third parties' unlawful conduct.

108.    Defendants' conduct as described above violated California Penal Code § 631(a).

CLASS ACTION COMPLAINT                -31-

Under Penal Code § 637.2, Plaintiffs and the Class members therefore are entitled to $5,000 in statutory damages per violation, even in the absence of proof of actual damages, the amount deemed proper by the California Legislature.

## SECOND CAUSE OF ACTION

**Invasion of Privacy**
**(Violation of Art. 1, § 1, California Constitution)**

**(Plaintiffs Individually and on Behalf of the Class Members)**

109.    Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

110.    "Privacy" is listed in Article I, Section 1, of the California Constitution as a fundamental right of all Californians.  That section of the Constitution provides: "All people are by nature free and independent and have inalienable rights.  Among those are enjoying and defending life, liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

111.    The right to privacy in California's Constitution creates a right of action against private entities such as Defendants.  To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms.

112.    Plaintiffs and Class members have a legally protected privacy interest in their private and confidential communications with Defendants' Website.  These communications included data reflecting private sexual interests, orientation, search terms, video titles, scene descriptors and names of actors, and interactions with the site's adult content marketplace. The search for, selection of, and consumption of online pornography is a highly intimate, private and sensitive personal activity, and any associated data is among the most sensitive personal information. Plaintiffs and Class members have privacy interests in conducting these activities without information about these activities being observed, intruded upon or interfered with by undisclosed third parties.

CLASS ACTION COMPLAINT                -32-

113.    Plaintiffs and Class members had a reasonable expectation that this data would not be accessed by unknown third parties without consent. That expectation is particularly strong given that unregistered users were not required to affirmatively accept a privacy policy, login, or otherwise manifest consent to third-party surveillance.

114.    Defendant's conduct constituted a serious and unjustified intrusion into Plaintiffs' digital privacy. Allowing or procuring the transmission of private and personally identifiable information to third-party ad and analytics entities—including Google and other third-party tracking services—without meaningful notice or consent, and for commercial gain, offends established social norms and expectations.

115.    As a direct and proximate result of Defendants' actions, Plaintiffs and Class members have had their privacy invaded and have sustained injury, including loss of control over their personal information.

116.    Plaintiffs and Class members seek appropriate relief for that injury, including but not limited to restitution, disgorgement of profits earned by Defendants as a result of their intrusions upon Plaintiffs' and Class members' privacy, nominal damages, and any other equitable relief that will properly compensate Plaintiffs and Class members for the harm to their privacy interests.

117.    Plaintiffs also seek such other relief as the Court may deem just and proper.

### THIRD CAUSE OF ACTION

**Intrusion Upon Seclusion**
**(Common Law Invasion of Privacy)**

**(Plaintiffs Individually and on Behalf of the Class Members)**

118.    Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

119.    Under California common law, the tort of intrusion upon seclusion is established where a plaintiff can show: (1) an intentional intrusion into a private place, conversation, or matter; (2) in a manner highly offensive to a reasonable person.

120.    Plaintiffs and Class members had a reasonable expectation that their interactions

CLASS ACTION COMPLAINT            -33-

with the Website—including the search terms they entered, the pornographic videos they viewed, the orientation categories they navigated, and their broader behavioral patterns on the site—would remain private and would not be observed, recorded, or disclosed to unknown third parties.

121.    The nature of the information disclosed—particularly sexual orientation, sexual preferences, and detailed scene-level metadata associated with adult content—is highly sensitive. These details are deeply personal, and the average person would reasonably expect to maintain control over whether and to whom such information is shared.

122.    Defendants knowingly enabled and facilitated the real-time tracking, recording, and interception of Plaintiffs' and Class members' private interactions with the Website by embedding Trackers operated by third parties, including but not limited to Google. These Trackers recorded Plaintiffs' and Class members' online behavior on the Website and transmitted the resulting data to third-party servers without their knowledge or consent.

123.    Defendants' actions constituted a clear and intentional intrusion into Plaintiffs' and Class members' private affairs. The decision to embed and activate these Trackers—without providing conspicuous notice, without requiring affirmative consent, and without offering users any real opportunity to opt out—amounts to an intentional circumvention of Plaintiffs' right to control their own personal information.

124.    The intrusion was highly offensive to a reasonable person. The average individual would be deeply disturbed to learn that a pornography website they accessed anonymously had allowed advertising and analytics companies to observe and collect data about their private sexual preferences, behaviors, and expressions—particularly when done without any notice or consent and with the potential for behavioral profiling, cross-site identification, or location-based retargeting.

125.    Further, many users took and take steps to preserve their privacy—such as using private browsing modes or refraining from logging in—demonstrating both their subjective expectations of privacy and the unreasonableness of Defendants' conduct in overriding those expectations.

CLASS ACTION COMPLAINT                -34-

126.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Class members suffered injury to their dignity and autonomy. The intrusion into their private digital communications and sexual behavior was substantial and unjustified.

127.    Plaintiffs and Class members seek appropriate relief for this harm, including nominal damages, compensatory damages, restitution, disgorgement of ill-gotten gains, and all other equitable relief the Court deems just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, pray for the following relief:

(k)    An order certifying the Class, appointing Plaintiffs as representatives of the Class, and appointing counsel for Plaintiffs as class counsel;

(l)    An order declaring that Defendants' actions, as described above, violate California Penal Code § 631;

(m)    An order declaring that Defendants' actions, as described above, violate Art. 1, § 1 of the California Constitution;

(n)    An order finding in favor of Plaintiffs and the Class members on all counts;

(o)    Statutory damages of $5,000 per violation under California Penal Code § 637.2 to Plaintiffs and each of the members of the Class, and any other damages that the Court deems fair and just, including punitive damages;

(p)    An award of compensatory and/or nominal damages to Plaintiffs and each of the members of the Class;

(q)    An order of restitution and all other forms of equitable monetary relief;

(r)    Pre- and post-judgment interest on all amounts awarded to the extent allowed by law;

(s)    An order awarding Plaintiffs and the Class payment of their reasonable attorneys' fees and expenses and costs of the suit; and

(t)    Any further relief as the Court may deem proper.

CLASS ACTION COMPLAINT                    -35-

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Dated: June 9, 2025                                    Respectfully submitted,

                                            By:   /s/ James C. Shah
                                                  James C. Shah (SBN #260435)
                                                  Email: jcshah@millershah.com
                                                  Kolin C. Tang (SBN #279834)
                                                  Email: kctang@millershah.com
                                                  **MILLER SHAH LLP**
                                                  8730 Wilshire Blvd., Suite 400
                                                  Los Angeles, CA 90211
                                                  Telephone: (866) 540-5505
                                                  Facsimile: (866) 300-7367

                                                  Katrina Carroll, Esq.*
                                                  Email: katrina@csclassactions.com
                                                  Kyle Shamberg, Esq.*
                                                  Email: kyle@csclassactions.com
                                                  **CARROLL SHAMBERG LLC**
                                                  111 West Washington Street Suite 1240
                                                  Chicago, IL 60602
                                                  Telephone: (872) 215-6205

                                                  *pro hac vice forthcoming

                                                  *Attorneys for Plaintiffs and the Putative Class*

CLASS ACTION COMPLAINT                    -36-

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

Electronically FILED by
Superior Court of California,
County of Los Angeles
6/09/2025 3:08 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Nunez, Deputy Clerk

## NOTICE TO DEFENDANT:
### *(AVISO AL DEMANDADO):*
AYLO USA INCORPORATED and AYLO GLOBAL ENTERTAINMENT, INC.

## YOU ARE BEING SUED BY PLAINTIFF:
### *(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
SCOTT ADAIR, KENT HENDERSON, and TARRIS WALLACE, individually and on behalf of a class of similarly situated individuals,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* LOS ANGELES SUPERIOR COURT

Stanley Mosk Courthouse, 111 N Hill St, Los Angeles, CA 90012

CASE NUMBER:
*(Número del Caso):*

25STCV16659

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
James C. Shah, Miller Shah LLP, 8730 Wilshire Blvd., Suite 400  Los Angeles, CA 90211; (866) 540-5505

DATE:
*(Fecha)* 06/09/2025

Clerk, by     David W. Slayton, Executive Officer/Clerk of Court     , Deputy
*(Secretario)* _____ J. Nunez _____ *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario  Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100  [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| James C. Shah (SBN 260435) and Kolin C. Tang (SBN 279834)<br>Miller Shah LLP, 8730 Wilshire Blvd., Suite 400, Los Angeles, CA 90211<br><br>TELEPHONE NO.: (866) 540-5505    FAX NO.: (866) 300-7367<br>EMAIL ADDRESS: jcshah@millershah.com; kctang@millershah.com<br>ATTORNEY FOR (Name): Plaintiffs and the Putative Class | **Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>6/09/2025 3:08 PM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By J. Nunez, Deputy Clerk** |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 111 N Hill Street
MAILING ADDRESS: 111 N Hill Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
SCOTT ADAIR, et al. v. AYLO USA INCORPORATED, et al.

| CIVIL CASE COVER SHEET<br>[x] **Unlimited**    [ ] **Limited**<br>(Amount       (Amount<br>demanded     demanded is<br>exceeds $35,000)   $35,000 or less) | Complex Case Designation<br>[ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER:<br>25STCV16659<br><br>JUDGE:<br>DEPT.: |
|---|---|---|

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[x] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [x] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action (specify): 3
5. This case [x] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: June 9, 2025

James C. Shah
_____
(TYPE OR PRINT NAME)

▶ /s/ James C. Shah
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.    Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**
                                                                                                            **CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

CM-010 [Rev. January 1, 2024]                                    **CIVIL CASE COVER SHEET**                                    **Page 2 of 2**

| SHORT TITLE | CASE NUMBER |
|---|---|
| SCOTT ADAIR, et al. v. AYLO USA INCORPORATED, et al. | 25STCV16659 |

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1. Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7. Location where petitioner resides. |
| 2. Permissive filing in Central District. | 8. Location wherein defendant/respondent functions wholly. |
| 3. Location where cause of action arose. | 9. Location where one or more of the parties reside. |
| 4. Location where bodily injury, death or damage occurred. | 10. Location of Labor Commissioner Office. |
| 5. Location where performance required, or defendant resides. | 11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6. Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| SCOTT ADAIR, et al. v. AYLO USA INCORPORATED, et al. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| SCOTT ADAIR, et al. v. AYLO USA INCORPORATED, et al. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Contract** (Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/ negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br><br>Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| SCOTT ADAIR, et al. v. AYLO USA INCORPORATED, et al. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☑ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

| | | |
|---|---|---|
| LASC CIV 109 Rev. 01/23<br>For Mandatory Use | CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION | LASC Local Rule 2.3 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| SCOTT ADAIR, et al. v. AYLO USA INCORPORATED, et al. | |

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON:<br>☑ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | | | ADDRESS: |
|---|---|---|---|
| CITY: | STATE: | ZIP CODE: | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the __CENTRAL__ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: __06/09/2025__

__/s/ James C. Shah__

(SIGNATURE OF ATTORNEY/FILING PARTY

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1.  Original Complaint or Petition.
2.  If filing a Complaint, a completed Summons form for issuance by the Clerk.
3.  Civil Case Cover Sheet Judicial Council form CM-010.
4.  Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5.  Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6.  A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7.  Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.



### Superior Court of California, County of Los Angeles
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS MUST SERVE THIS ADR INFORMATION PACKAGE ON ANY NEW PARTIES NAMED TO THE ACTION WITH THE CROSS-COMPLAINT.**

**WHAT IS ADR?**

Alternative Dispute Resolution (ADR) helps people find solutions to their legal disputes without going to trial. The Court offers a variety of ADR resources and programs for various case types.

**TYPES OF ADR**

- **Negotiation.** Parties may talk with each other about resolving their case at any time. If the parties have attorneys, they will negotiate for their clients.

- **Mediation.** Mediation may be appropriate for parties who want to work out a solution but need help from a neutral third party. A mediator can help the parties reach a mutually acceptable resolution. Mediation may be appropriate when the parties have communication problems and/or strong emotions that interfere with resolution. Mediation may not be appropriate when the parties want a public trial, lack equal bargaining power, or have a history of physical or emotional abuse.

- **Arbitration.** Less formal than a trial, parties present evidence and arguments to an arbitrator who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.

- **Settlement Conferences.** A judge or qualified settlement officer assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Mandatory settlement conferences may be ordered by a judicial officer. In some cases, voluntary settlement conferences may be requested by the parties.

**ADVANTAGES OF ADR**

- **Save time and money.** Utilizing ADR methods is often faster than going to trial and parties can save on court costs, attorney's fees, and other charges.
- **Reduce stress and protect privacy.** ADR is conducted outside of a courtroom setting and does not involve a public trial.
- **Help parties maintain control.** For many types of ADR, parties may choose their ADR process and provider.

**DISADVANTAGES OF ADR**

- **Costs.** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial.** ADR does not provide a public trial or decision by a judge or jury.

**WEBSITE RESOURCES FOR ADR**

- **Los Angeles Superior Court ADR website:** www.lacourt.org/ADR
- **California Courts ADR website:** www.courts.ca.gov/programs-adr.htm

**Los Angeles Superior Court ADR Programs for Unlimited Civil (cases valued over $35,000)**

Litigants should closely review the requirements for each program and the types of cases served.

- **Civil Mediation Vendor Resource List.** Litigants in unlimited civil cases may use the Civil Mediation Vendor Resource List to arrange voluntary mediations without Court referral or involvement. The Resource List includes organizations that have been selected through a formal process that have agreed to provide a limited number of low-cost or no-cost mediation sessions with attorney mediators or retired judges. Organizations may accept or decline cases at their discretion. Mediations are scheduled directly with these organizations and are most often conducted through videoconferencing. The organizations on the Resource List target active civil cases valued between $50,000-$250,000, though cases outside this range may be considered. *For more information and to view the list of vendors and their contact information, download the Resource List Flyer and FAQ Sheet at www.lacourt.org/ADR/programs.html.*

  **RESOURCE LIST DISCLAIMER:** The Court provides this list as a public service. The Court does not endorse, recommend, or make any warranty as to the qualifications or competency of any provider on this list. Inclusion on this list is based on the representations of the provider. The Court assumes no responsibility or liability of any kind for any act or omission of any provider on this list.

- **Mediation Volunteer Panel (MVP).** Unlimited civil cases referred by judicial officers to the Court's Mediation Volunteer Panel (MVP) are eligible for three hours of virtual mediation at no cost with a qualified mediator from the MVP. Through this program, mediators volunteer preparation time and three hours of mediation at no charge. If the parties agree to continue the mediation after three hours, the mediator may charge their market hourly rate. When a case is referred to the MVP, the Court's ADR Office will provide information and instructions to the parties. The Notice directs parties to meet and confer to select a mediator from the MVP or they may request that the ADR Office assign them a mediator. The assigned MVP mediator will coordinate the mediation with the parties. *For more information or to view MVP mediator profiles, visit the Court's ADR webpage at www.lacourt.org/ADR or email ADRCivil@lacourt.org.*

- **Mediation Center of Los Angeles (MCLA) Referral Program.** The Court may refer unlimited civil cases to mediation through a formal contract with the Mediation Center of Los Angeles (MCLA), a nonprofit organization that manages a panel of highly qualified mediators. Cases must be referred by a judicial officer or the Court's ADR Office. The Court's ADR Office will provide the parties with information for submitting the case intake form for this program. MCLA will assign a mediator based on the type of case presented and the availability of the mediator to complete the mediation in an appropriate time frame. MCLA has a designated fee schedule for this program. *For more information, contact the Court's ADR Office at ADRCivil@lacourt.org.*

- **Resolve Law LA (RLLA) Virtual Mandatory Settlement Conferences (MSC).** Resolve Law LA provides three-hour virtual Mandatory Settlement Conferences at no cost for personal injury and non-complex employment cases. Cases must be ordered into the program by a judge pursuant to applicable Standing Orders issued by the Court and must complete the program's online registration process. The program leverages the talent of attorney mediators with at least 10 years of litigation experience who volunteer as settlement officers. Each MSC includes two settlement officers, one each from the plaintiff and defense bars. Resolve Law LA is a joint effort of the Court, Consumer Attorneys Association of Los Angeles County (CAALA), Association of Southern California Defense Counsel (ASCDC), Los Angeles Chapter of the American Board of Trial Advocates (LA-ABOTA), Beverly Hills Bar Foundation (BHBF), California Employment Lawyers Association (CELA), and Los Angeles County Bar Association (LACBA). *For more information, visit https://resolvelawla.com.*

LASC CIV 271 Rev. 11/24
For Mandatory Use

- **Judicial Mandatory Settlement Conferences (MSCs).** Judicial MSCs are ordered by the Court for unlimited civil cases and may be held close to the trial date or on the day of trial. The parties and their attorneys meet with a judicial officer who does not make a decision, but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For more information, visit https://www.lacourt.org/division/civil/CI0047.aspx.

**Los Angeles Superior Court ADR Programs for Limited Civil (cases valued below $35,000)**
Litigants should closely review the requirements for each program and the types of cases served.

- **Online Dispute Resolution (ODR).** Online Dispute Resolution (ODR) is a free online service provided by the Court to help small claims and unlawful detainer litigants explore settlement options before the hearing date without having to come to court. ODR guides parties through a step-by-step program. After both sides register for ODR, they may request assistance from trained mediators to help them reach a customized agreement. The program creates settlement agreements in the proper form and sends them to the Court for processing. Parties in small claims and unlawful detainer cases must carefully review the notices and other information they receive about ODR requirements that may apply to their case. *For more information, visit https://my.lacourt.org/odr.*

- **Dispute Resolution Program Act (DRPA) Day-of-Hearing Mediation.** Through the Dispute Resolution Program Act (DRPA), the Court works with county-funded agencies, including the Los Angeles County Department of Consumer & Business Affairs (DCBA) and the Center for Conflict Resolution (CCR), to provide voluntary day-of-hearing mediation services for small claims, unlawful detainer, limited civil, and civil harassment matters. DCBA and CCR staff and trained volunteers serve as mediators, primarily for self-represented litigants. There is no charge to litigants. *For more information, visit https://dcba.lacounty.gov/countywidedrp.*

- **Temporary Judge Unlawful Detainer Mandatory Settlement Conference Pilot Program.** Temporary judges who have been trained as settlement officers are deployed by the Court to designated unlawful detainer court locations one day each week to facilitate settlement of unlawful detainer cases on the day of trial. For this program, cases may be ordered to participate in a Mandatory Settlement Conference (MSC) by judicial officers at Stanley Mosk, Long Beach, Compton, or Santa Monica. Settlement rooms and forms are available for use on the designated day at each courthouse location. There is no charge to litigants for the MSC. *For more information, contact the Court's ADR Office at ADRCivil@lacourt.org.*

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>06/09/2025<br><br>David W. Slayton, Executive Officer / Clerk of Court<br><br>By: _____ J. Nunez _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>25STCV16659 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✔ | David S. Cunningham III | 11 | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

David W. Slayton, Executive Officer / Clerk of Court

on 06/10/2025
(Date)

By J. Nunez_____, Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

### INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

#### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

#### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

#### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

#### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

#### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

#### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

#### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

#### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

#### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

#### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

#### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

LACIV 190 (Rev 6/18)   **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

Electronically FILED by
Superior Court of California,
County of Los Angeles
6/16/2025 5:02 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By L. Smith, Deputy Clerk

James C. Shah (SBN #260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN #279834)
Email: kctang@millershah.com
**MILLER SHAH LLP**
8730 Wilshire Blvd., Suite 400
Los Angeles, CA 90211
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

*Attorney for Plaintiffs and the Putative Class*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| SCOTT ADAIR, KENT HENDERSON, and TARRIS WALLACE, individually and on behalf of a class of similarly situated individuals,<br><br>*Plaintiffs,*<br><br>v.<br><br>AYLO USA INCORPORATED and AYLO GLOBAL ENTERTAINMENT, INC.<br><br>*Defendants.* | CASE NO: 25STCV16659<br><br>**PROOF OF SERVICE OF SUMMONS ON DEFENDANT AYLO USA INCORPORATED** |

PROOF OF SERVICE OF SUMMONS

MILLER SHAH, LLP
1230 COLUMBIA STREET, SUITE 1140
SAN DIEGO, CA 92101
619-235-2416
Atty. File No.: 25STCV16659

SUPERIOR COURT OF CA., COUNTY OF LOS ANGELES
CENTRAL DISTRICT-STANLEY MOSK

PLAINTIFF    : SCOTT ADAIR, KENT HENDERSON, ETC.
DEFENDANT   : AYLO USA INCORPORATED ET AL.

Case No. : 25STCV16659
**PROOF OF SERVICE OF SUMMONS**

1.    At the time of service I was at least 18 years of age and not a party to this action.

2.    I served copies of the  SUMMONS; COMPLAINT; CIVIL CASE COVER SHEET; CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION; NOTICE OF CASE ASSIGNMENT UNLIMITED CIVIL CASE; ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE; VOLUNTARY EFFICIENT LITIGATION STIPULATIONS; ORDER PURSUANT TO CCP 1054(A); FIRST AMENDED GENERAL ORDER

3.    a.  Party Served   : AYLO USA INCORPORATED
                               AUTHORIZED AGENT FOR SERVICE: CT CORPORATION SYSTEM
        b.  Person Served : DIANA RUIZ (AUTHORIZED)
                                 (AUTHORIZED AGENT FOR SERVICE)

4.    Address where the party was served: 330 NORTH BRAND BLVD    SUITE 700
                                           GLENDALE, CA 91203  (Business)

5.    I served the party
    a.  **by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on June 12, 2025  (2) at: 11:40 AM

6.    The "Notice to the person served" (on the summons) was completed as follows:
    c.   on behalf of: AYLO USA INCORPORATED
                       AUTHORIZED AGENT FOR SERVICE: CT CORPORATION SYSTEM
        under  [xx]  CCP 416.10  (corporation)

7.    **Person who served papers**
    a.  SAL DIMAS
    b.  KNOX ATTORNEY SERVICE, INC.
        1550 HOTEL CIRCLE NORTH SUITE 440
        SAN DIEGO, CA 92108
    c.  619-233-9700

    d.  Fee For Service : $ 129.95
    e.  I am
        (3)  a registered California process server
           (i)  an independent contractor
           (ii)  Registration No.: 2014347850
           (iii)  County: LOS ANGELES,

8.    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date : June 13, 2025

Signature: _____
                                  SAL DIMAS

Jud. Coun. form, rule 2.150 CRC
JC Form POS 010 (Rev. January 1, 2007)

**PROOF OF SERVICE**

Ref. No. : 0798618-01

Electronically FILED by
Superior Court of California,
County of Los Angeles
6/16/2025 5:02 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By L. Smith, Deputy Clerk

James C. Shah (SBN #260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN #279834)
Email: kctang@millershah.com
**MILLER SHAH LLP**
8730 Wilshire Blvd., Suite 400
Los Angeles, CA 90211
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

*Attorney for Plaintiffs and the Putative Class*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| SCOTT ADAIR, KENT HENDERSON, and TARRIS WALLACE, individually and on behalf of a class of similarly situated individuals, <br><br> *Plaintiffs,* <br><br> v. <br><br> AYLO USA INCORPORATED and AYLO GLOBAL ENTERTAINMENT, INC. <br><br> *Defendants.* | CASE NO: 25STCV16659 <br><br> **PROOF OF SERVICE OF SUMMONS ON DEFENDANT AYLO GLOBAL ENTERTAINMENT, INC.** |

PROOF OF SERVICE OF SUMMONS

MILLER SHAH, LLP
1230 COLUMBIA STREET,  SUITE 1140
SAN DIEGO,  CA   92101
619-235-2416
Atty. File No.:  25STCV16659


SUPERIOR COURT OF CA., COUNTY OF LOS ANGELES
CENTRAL DISTRICT-STANLEY MOSK

PLAINTIFF      :  SCOTT ADAIR, KENT HENDERSON, ETC.             Case No. :  25STCV16659
DEFENDANT    :  AYLO USA INCORPORATED ET AL.                    **PROOF OF SERVICE OF SUMMONS**

1.    At the time of service I was at least 18 years of age and not a party to this action.

2.    I served copies of the  SUMMONS; COMPLAINT; CIVIL CASE COVER SHEET; CIVIL CASE COVER
                 SHEET ADDENDUM AND STATEMENT OF LOCATION; NOTICE OF CASE
                 ASSIGNMENT UNLIMITED CIVIL CASE; ALTERNATIVE DISPUTE RESOLUTION
                 (ADR) INFORMATION PACKAGE; VOLUNTARY EFFICIENT LITIGATION
                 STIPULATIONS; ORDER PURSUANT TO CCP 1054(A); FIRST AMENDED
                 GENERAL ORDER

3.    a.  Party Served     :   AYLO GLOBAL ENTERTAINMENT, INC.
                              AUTHORIZED AGENT FOR SERVICE: PARACORP INCORPORATED
       b.  Person Served  :   ROSELYNNE VANG (SOP SPECIALIST)
                              (ASIAN/F/31-35/5'1-5'6/161-180/BRN HR)

4.    Address where the party was served:  2804 GATEWAY OAKS DR
                                       SACRAMENTO, CA  95833   (Business)

5.    I served the party
       a.  **by personal service.**   I personally delivered the documents listed in item 2 to the party or person authorized to
            receive service of process for the party  (1)  on   June  12,  2025   (2)  at: 02:22 PM

6.    The "Notice to the person served" (on the summons) was completed as follows:
       c.    on behalf of:  AYLO GLOBAL ENTERTAINMENT, INC.
                        AUTHORIZED AGENT FOR SERVICE: PARACORP INCORPORATED
            under  [xx]  CCP 416.10   (corporation)


7.    **Person who served papers**
       a.  RITONG KYLEE IECHAD                         d.   Fee For Service :  $ 129.95
       b.  KNOX ATTORNEY SERVICE, INC.                 e.   I am
            1550 HOTEL CIRCLE NORTH SUITE 440                (3)  a registered California process server
            SAN DIEGO, CA 92108                              (i)    an independent contractor
       c.  619-233-9700                                      (ii)   Registration No.:  150
                                                             (iii)  County:  SUTTER, CA

8.    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.


Date :   June  13,  2025                  Signature:  _____
                                                            RITONG KYLEE IECHAD