James C. Shah (SBN #260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN #279834)
Email: kctang@millershah.com
**MILLER SHAH LLP**
8730 Wilshire Blvd., Suite 400
Los Angeles, CA 90211
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

**[Additional Counsel in Signature Block]**

*Attorney for Plaintiffs and the Putative Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

SCOTT ADAIR, KENT HENDERSON, and TARRIS WALLACE, individually and on behalf of a class of similarly situated individuals,

*Plaintiffs,*

v.

AYLO FREESITES LTD., a foreign entity, AYLO HOLDINGS S.A.R.L., a foreign entity, 9219-1568 QUEBEC, INC., a foreign entity, AYLO USA INCORPORATED and AYLO GLOBAL ENTERTAINMENT, INC.

*Defendants.*

Case No. 2:25-cv-06351-WLH-KS

Assigned to: Hon. Wesley L. Hsu

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

Hearing Date: December 19, 2025
Time: 1:30 p.m.
Place: Courtroom 9B, 9th Floor
First Street U.S. Courthouse
Los Angeles, CA

# TABLE OF CONTENTS


INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................. 2

I. PLAINTIFF'S CLAIMS ARE PROPERLY PLED……………………………2

A. Legal Standard………………………………………………………2

B. Plaintiffs Had A Reasonable Expectation of Privacy When Browsing the Pornhub Website……………………………………………………3

C. The Trackers Intercepted Plaintiffs' Data and Disclosed it to Third Parties..5

D. Plaintiffs' Communications Were Intercepted In Transit…………………..6

E. Plaintiffs Never Consented to Pornhub's Browsewrap Privacy Notice…….7

F. Plaintiffs State Claims for Invasion of Privacy and Intrusion Upon Seclusion…………………………………………………………..10

II. THIS COURT HAS JURISDICTION OVER DEFENDANTS AYLO HOLDINGS, AYLO GLOBAL, AND AYLO USA…………………………12

A. The Court Has Jurisdiction Over Aylo Holdings, Aylo Global, and Aylo USA Under The Representative Services Doctrine………………………13

B. Plaintiffs Are Not Required To Plead That A Lack Of Corporate "Separateness" Or "Fraud Or Injustice" Under The Representative Services Doctrine, But There Will Be An Inequitable Result If Aylo Holdings, Aylo Global, and Aylo USA Are Dismissed…………………………………… 16

CONCLUSION……………………………………………………………17

L.R. 11-6.2 CERTIFICATE OF COMPLIANCE………………………………...18

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................3

*B.D. v. Blizzard Ent., Inc.*,
76 Cal. App. 5th 931 (2022) ........................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................3

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ..........................................................7

*Cody v. Jill Acquisition LLC*,
789 F. Supp. 3d 940 (S.D. Cal. 2025) .........................................................8

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ..................................................................................13

*D'Angelo v. Penny OpCo, LLC*,
No. 23-cv-0981-BAS-DDL, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ...............7

*David Ball v. The Standard Fire Ins. Co.*,
2025 WL 2633067 (C.D. Cal. June 6, 2025) ..............................................17

*Doe v. Call-On Doc Inc.*,
No. 24cv2095-GPC(KSC), 2025 WL 1677632 (S.D. Cal. Jun. 13, 2025) ................7

*Dorel Indus., Inc. v. Superior Ct.*,
134 Cal. App. 4th 1267 (2005) ..................................................................15

*Fleites v. MindGeek S.A.R.L.*,
2022 WL 4455558 (C.D. Cal. July 29, 2022) ..............................................15

*Fleites v. MindGeek S.A.R.L.*,
2025 WL 2902301 (C.D. Cal. Sept. 26, 2025) ......................................13, 14

*Foman v. Davis*,
371 U.S. 178 (1962) ..................................................................................17

*Getz v. CVS Health Corp., et al.*,
2:25-cv-04689-MWC-E, Dkt. No. 79 (C.D. Cal. Oct. 24, 2025) .......... 9

*Gourdine v. Karl Storz Endoscopy-Am., Inc.*,
223 F. Supp. 3d 475 (D.S.C. 2016) .......... 15

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 6

*Hawaiian Airlines, Inc. v. Mankiewicz Coating, LLC*,
2015 WL 13284946 (C.D. Cal. Sept. 11, 2015) .......... 13, 15, 16

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 10, 11

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) .......... 10, 11, 13

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 12

*In re Facebook, Inc., Internet Tracking Litig* ("*Facebook Tracking*,"),
956 F. 3d 589 (9th Cir. 2020) .......... 4, 10, 11, 12

*In re Google RTB Consumer Privacy Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .......... 4, 12

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 7

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 12

*Mitchell v. Applovin Corp.*,
24-CV-434574, Op. (Santa Clara Cty. Sup. Ct. May 9, 2025) .......... 5, 12

*Opperman v. Path, Inc.*,
205 F.Supp.3d 1064 (N.D. Cal. 2016) .......... 12

*Paramount Farms, Inc. v. Ventilex B.V.*,
735 F. Supp. 2d 1189 (E.D. Cal. 2010) .......... 15

*Pioneer Electronics (USA), Inc. v. Superior Court*,
40 Cal.4th 360, (2007) .......... 10

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 14

*Sonora Diamond Corp. v. Superior Court*,
83 Cal. App. 4th 523 (2000) .......... 13, 16

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .......... 3

*Toy v. Life Line Screening of Am. Ltd.*,
No. 23-CV-04651-RFL, 2024 WL 1701263 (N.D. Cal. Mar. 19, 2024) .......... 12

*United States v. Corinthian Colleges*,
655 F.3d 984 (9th Cir. 2011) .......... 9

*User Profile Litig.*,
402 F.Supp.3d 767 (N.D. Cal. 2019) .......... 12

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) .......... 7

**Statutes**

Article I, section 1 of the California Constitution .......... 10

Cal. Civ. Code § 1798.100 .......... 3

Cal. Penal Code § 1546, *et seq.* .......... 4

**Rules**

Federal Rule of Evidence 801(d)(2) .......... 14

## INTRODUCTION

Plaintiffs, Scott Adair, Kent Henderson, and Tarris Wallace ("Plaintiffs"), submit this memorandum in opposition to Defendants' motion to dismiss because the First Amended Complaint ("FAC") more than plausibly alleges that Defendants, Aylo USA Incorporated ("Aylo USA"), Aylo Global Entertainment, Inc. ("Aylo Global"), Aylo Freesites, Ltd. ("Aylo Freesites"), Aylo Holdings S.a.r.l. ("Aylo Holdings") and 9219-1568 Quebec, Inc. ("9219-1568 Quebec") (collectively, "Aylo" or "Defendants"), operated the Pornhub website with embedded third-party tracking technologies that secretly intercepted, disclosed, and commercially exploited some of the most sensitive information a person can share online—pornographic viewing, search terms, and sexual-orientation-based browsing—without any meaningful consent. The FAC details how Defendants installed Google Analytics 4 and other adult-ad network trackers so that each visit, search, and video-view, along with other personal identifying information, on Pornhub was transmitted in real time to third parties, including Google, together with device/browser identifiers that allow those third parties to build behavioral profiles of users' sexual activity.

Defendants' effort to recast this as innocuous "numerical" or "anonymized" data simply ignores the pleaded facts that the data included not only IP addresses, which the California Legislature has recognized as "personal information," but explicit video titles, scene descriptors, category selections, and search terms—data California law recognizes as private and that is uniquely revealing when paired with persistent identifiers.

The motion also depends on inferences regarding user consent that are not reasonable in light of the allegations. The FAC alleges that none of the three named Plaintiffs were ever prompted to accept a privacy policy, terms of use, or a cookie banner, and that the only purported notice was buried in inconspicuous hyperlinks; consequently, Plaintiffs were not on notice of any disclosures and did not consent to

any interception or sharing of their data. And even if a user had seen Pornhub's notice, the FAC pleads that Defendants went well beyond "service-provider" sharing and instead enabled Google and other third parties to use Pornhub users' sexual-content data for their own advertising and profiling purposes, conduct the purported notice does not authorize.

Defendants' technical quarrels with "interception" are also premature. Plaintiffs expressly allege that the trackers captured their communications "in real time" and "while those communications were in transit" with supporting factual details, which satisfies CIPA pleading requirements and aligns with how courts in this District treat similar web-tracking cases.

The FAC then ties that interception to harms protected by both California's constitutional privacy right and common-law intrusion, because it involved intimate sexual browsing undertaken with a reasonable expectation of confidentiality.

Finally, Defendants' jurisdictional challenge overlooks Plaintiffs' detailed enterprise allegations. Plaintiffs plead that all of the Aylo entities are part of a single pornography conglomerate that historically operated Pornhub together, shared managers and directors, and admitted as much in a federal deferred-prosecution agreement. Those facts support exercising jurisdiction here.

At bottom, Defendants ask the Court to disregard well-pleaded allegations and to resolve fact questions (consent, interception mechanics, and the scope of the Aylo enterprise) against Plaintiffs. Such fact-finding is inappropriate at the pleading stage and the motion should be denied.

## ARGUMENT

### I. PLAINTIFF'S CLAIMS ARE PROPERLY PLED

#### A. Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, "accepted as true," to "state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility, however, is not certainty or probability. It "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007).

In other words, a complaint may advance even if it appears that "actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* (internal citations omitted). Thus, plaintiffs do not need to substantiate their claims at the pleadings stage, and the complaint "may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im* plausible [*sic*]." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (emphasis in original).

### B. Plaintiffs Had A Reasonable Expectation of Privacy When Browsing the Pornhub Website

Defendants argue that the only information they collected and disclosed was anonymized, deidentified "numerical" data (Memorandum in support of Motion to Dismiss ("MTD"), at 6-8) and that Plaintiffs could have had no reasonable expectation of privacy in such data. This argument is flawed for several reasons.

First, California law has expressly recognized a legally protected privacy interest in IP addresses. For example, in 2018, the California Legislature enacted into law the California Consumer Privacy Act of 2018 ("CCPA"), Cal. Civ. Code § 1798.100, *et seq.*, which recognizes that "[i]dentifiers such as a[n] Internet Protocol address," constitute a consumer's "personal information," (Civ. Code § 1798.140(v)(1)(A)). Defendants ignore that the CCPA's recognition supports a

reasonable expectation of privacy in such personal information.[1] *See In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 946-47 (N.D. Cal. 2022) ("plaintiffs allege that Google sells sensitive personal information such as plaintiff's IP address….Google argues that such information is routinely shared and thus cannot support a reasonable expectation of privacy. Not so. First, such information is personal information under California law and parties generally maintain a reasonable expectation in their personal information."). The court in *In re Google RTB* also recognized a reasonable expectation of privacy in the collective information Defendants gathered, which can be compiled into unique profiles linking users across geographic locations and devices. *Id*. (citing *In re Facebook, Inc., Internet Tracking Litig* ("*Facebook Tracking*"), 956 F. 3d 589, 604 (9th Cir. 2020)) (reasonable expectation of privacy where Facebook allegedly collected and created "highly personalized profiles from [plaintiffs'] sensitive browsing histories and habits."); *see* FAC ¶ 53 ("the information Aylo facilitates Google in collecting can be used to construct detailed, individualized profiles of users' sexual behavior and preferences"); ¶ 85 ("the combination of detailed browser information with specific viewing histories creates a form of 'behavioral fingerprinting' that can be used to recognize returning visitors across platforms").

Moreover, Defendants' contention that there can be no expectation of privacy in IP addresses because they are commonly shared *with the website they visit* or used by internet service providers for routing purposes is separate from Plaintiffs'

---

[1] Additionally, in 2015, California's Legislature enacted California's Electronic Communications Privacy Act ("CECPA"), Cal. Penal Code § 1546, *et seq.*, which precludes the government from compelling internet service providers to provide a user's IP addresses without a warrant or other limited exception. (Penal Code §§ 1546(d) & (h), 1546.1(a)(1) & (b), 1546.4(a) (2015) (stating that government's violation of CECPA by compelling production of or access to IP address of individual or device participating in electronic communication without warrant or other limited exception can result in suppression of evidence at trial).

expectations that their IP addresses (and other personal browsing data) would be shared with third parties. *See Mitchell v. Applovin Corp.*, 24-CV-434574, Op., at p. 2 (Santa Clara Cty. Sup. Ct. May 9, 2025) (reasonable expectation of privacy as to data *shared with third parties* is question of fact that cannot be resolved at this time).[2]

In any event, Plaintiffs allege that much more than their IP addresses was collected and disclosed. FAC ¶ 3 (the Trackers "capture and transmit a host of highly sensitive and detailed personal information, including the titles of specific videos a user views, scene-level descriptors about those videos (including the names of performers and explicit sexual acts featured), search terms entered, and sexual orientation-based category selections"). Plaintiffs plainly have a privacy interest in this incredibly personal information.

### C. The Trackers Intercepted Plaintiffs' Data and Disclosed it to Third Parties

Even crediting Defendants' assertion that the Adtng and Etahub Trackers are owned and operated by Defendants, and therefore did not disclose Plaintiffs' private information to any third party (MTD 8-10), there is no dispute that the Google Analytics Trackers disclosed such information to Google, or that the Trackers associated with camschat.net and hot123.com disclosed that information to other third-party adult platforms. In fact, Defendants do not argue that there was no disclosure with respect to the camschat.net and hot123.com Trackers.

As to Google, Defendants suggest that Google was essentially an extension or agent of their tracking scheme and served only Defendants'/Pornhub's interests. This is illogical on its face, as there is no question that these are two entirely separate entities with their own business interests and motivations for engaging in this

---

[2] A true and correct copy of the *Mitchell* decision is attached to the concurrently-filed Declaration of Kyle A. Shamberg ("Shamberg Decl.") as Exhibit "B" for the Court's convenience.

eavesdropping. FAC ¶ 51 ("Google can associate the data collected alongside the cookies not only with an email address, but with a named and potentially highly personalized user profile. This enables Google to link a user's private activity on Pornhub to their name and broader aspects of their digital identity, particularly when combined with other data collected across Google's ecosystem, such as Gmail usage, YouTube views, or Google Maps history"). Google is not collecting and analyzing this information as a favor for Pornhub but has its own commercial reasons for doing so.

Defendants' authority is thus inapposite on this point, as it focuses on cases where third parties merely provided software or other tools for the defendant entity to collect its website users' information. *See, e.g., Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021) ("there are no allegations here that [third party] FullStory intercepted and used the data itself"). Here, "Google uses all the information it collects through Google Analytics and integrates it with Google Ads, allowing Google to utilize, and improve, targeted advertising. Then, by tracking user behavior across different websites, Google can improve its targeted advertising, leading to higher click-through rates and, thus, more ad revenue." FAC ¶ 59. Plaintiffs have alleged that Google used the personal browsing data it collected.

**D. Plaintiffs' Communications Were Intercepted In Transit**

Contrary to Defendants' contentions, Plaintiffs repeatedly allege that the Trackers *do* intercept communications while they are in transit. FAC ¶ 117 ("These Trackers intercepted communications between Plaintiffs (and Class Members) and the Website, without their consent, and while those communications were in transit"); ¶ 121 ("These communications were transmitted to and intercepted by third parties while the communications were in transit, and were not authorized or consented to by Plaintiffs and Class members"); ¶ 42 ("The Google Analytics 4 tracker intercepts

these events, transmits them to Google's servers *in real time, as they occur*") (emphasis added).

Courts routinely find that online trackers like those at issue here intercept communications in transit. *See, e.g.*, *Doe v. Call-On Doc Inc.,* No. 24cv2095-GPC(KSC), 2025 WL 1677632, at *12 (S.D. Cal. Jun. 13, 2025) (finding interceptions occurred in transit where plaintiff alleged that Google Analytics' tracking code and TikTok Pixel sent simultaneous transmissions of her information and intercepted plaintiff's information in real time); *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 978 (C.D. Cal. 2023) (similar); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) (in which Meta does not dispute that its pixel tracker intercepts communications contemporaneously).

Regardless, at the motion to dismiss stage, a plaintiff is not required to allege how and when their communications are captured, and "a pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *D'Angelo v. Penny OpCo, LLC*, No. 23-cv-0981-BAS-DDL, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023). Therefore, any of Defendants' disputes regarding the Tracking Technologies' functionality are properly resolved after discovery. *See, e.g.*, *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 841 (N.D. Cal. 2014) ("While Facebook may ultimately produce evidence showing that the messages were actually accessed while in storage, not during transmission, that issue . . . would be better addressed as part of a motion for summary judgment with a more developed factual record.").

### E. Plaintiffs Never Consented to Pornhub's Browsewrap Privacy Notice

Defendants concede that Pornhub's Privacy Notice is a so-called "browsewrap" agreement that does not require any affirmative manifestation of consent to its terms. MTD at 12. California courts routinely find such browsewrap

agreements to be unenforceable. *Cody v. Jill Acquisition LLC*, 789 F. Supp. 3d 940 (S.D. Cal. 2025) ("'California and federal courts have reached consistent conclusions when evaluating the enforceability of agreements at either end of the spectrum, generally finding scrollwrap and clickwrap agreements to be enforceable and browsewrap agreements to be unenforceable'") (quoting *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 946 (2022) (citations omitted)).

To get around this, Defendants ask the Court to draw numerous inferences against Plaintiffs, namely that Plaintiffs did in fact see the contents of the Privacy Notice, that have no foundation in, and are actually contradicted by, the actual allegations of the FAC. Each Plaintiff alleges that he "was not prompted to accept or review any Privacy Policy, Terms of Use, or cookie banner," that "nothing on the screen alerted him that his communications and browsing behavior would be intercepted or disclosed," and that the purported Privacy Policy was "buried in inconspicuous hyperlinks." FAC ¶¶ 9-10, 12-13, 15-16. As a result, Plaintiffs were "not on notice of any disclosures and did not consent to any interception or sharing of [their] data." *Id.* These allegations demonstrate that Plaintiffs did not see ("nothing on the screen alerted him") and were not aware of the contents of any Privacy Notice and, accordingly, could not have consented to them by simply browsing the website.

Regardless, in their purported Privacy Notice, Defendants explain the ways in which they use visitors' "personal information." ECF Doc. 28-5, at 2. Only one of these uses suggests that Defendants may use personal information for advertising purposes, which is Defendants' representation that they may "analyze your use of, or interest in the content, products, or services, [or] to display content and advertising tailored to your interests on Pornhub." *Id*. Moreover, with regards to service providers, including Google Analytics, the Privacy Notice states that personal information is only disclosed to service providers to "enable us to provide our services" and that these service providers "are not permitted to process such

information for any other purposes." *Id.* at 3. Plaintiffs' allegations directly contradict these representations, as they allege that Defendants knowingly transmitted their personal information to Google not merely to enable PornHub's services and advertising but also to enable advertising services for Google's entire advertiser network. FAC ¶¶ 57-59. Thus, even if Defendants could prove that Plaintiffs assented to the purported Privacy Notice, which they cannot, this consent would still not preclude Plaintiffs' claims as the Privacy Notice promises that any third-party disclosures are limited to those necessary for Defendants' own operations and advertising, and therefore fails to put readers on notice of the disclosures alleged by Plaintiffs.

Defendants' contention that Plaintiffs consented to the tracking and disclosure of their sensitive, personal browsing information because they signed up for Google accounts at some point is similarly unavailing. Defendants attach purported copies of Google's Privacy Policy and "Sign Up" page (Lisy Decl., Exs. E-F), but do not provide any evidence or suggestion that Plaintiffs actually assented to them, instead asking the Court to draw the inference that they did. In any event, the "Sign Up" page Defendants provide is undated and the Privacy Policy states it is "Effective July 1, 2025," *after* the initial complaint was filed in this matter. Defendants have not established when or how Plaintiffs signed up for their Google accounts, what terms they did or did not agree to when they did so, nor whether that agreement permitted Defendants to *disclose* Plaintiffs' detailed and personal browsing, search, and video viewing behaviors to Google. The Court should decline to credit Defendants' speculative "evidence" of consent at this stage. *See United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (courts are generally prohibited from "'consider[ing] any material beyond the pleadings'" on a motion to dismiss) (citations omitted); *Getz v. CVS Health Corp., et al.*, 2:25-cv-04689-MWC-E, Dkt. No. 79, at p. 9 (C.D. Cal. Oct. 24, 2025) at 9 ("Medallia's submission of declaration

evidence on a motion to dismiss suggests its arguments [ ] are better suited for summary judgment").[3]

### F. Plaintiffs State Claims for Invasion of Privacy and Intrusion Upon Seclusion

Plaintiffs plead two cognizable causes of action for invasion of privacy. The first, intrusion on seclusion at common law, requires Plaintiffs to allege facts showing that (1) Defendants "intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy"; and (2) the intrusion [] "occur[red] in a manner highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009) (citations omitted). The second, violation of the right to privacy provided by Article I, section 1 of the California Constitution, requires Plaintiffs to allege (1) "a legally protected privacy interest"; (2) a reasonable expectation of privacy; and (3) an intrusion "constitut[ing] an egregious breach of the social norms" that is "highly offensive." *Id*. at 287.

Given the similarity of these legal theories, "courts consider the claims together when both are invoked and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook Tracking Litig.*, 956 F.3d at 601. Both branches of this inquiry are mixed questions of law and fact. *Pioneer Electronics (USA), Inc. v. Superior Court*, 40 Cal.4th 360, 370, (2007) (citing *Hill v. Nat'l Collegiate Athletic Assn*., 7 Cal. 4th 1, 40 (1994)). Only if the allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Id*. at 370 (citing *Hill*, 7 Cal.4th at 40).

Here, Plaintiffs had a reasonable expectation of privacy for the reasons discussed in Section I(B) above. Plaintiffs have also alleged a "highly offensive"

---

[3] A true and correct copy of the *Getz* decision is attached to the concurrently-filed Declaration of Kyle A. Shamberg as Exhibit "C" for the Court's convenience.

intrusion, and Defendants' contention otherwise is merely Defendants' opinion. Courts inform their assessment of an intrusion's offensiveness with "a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." ." *Facebook Tracking*, 956 F.3d at 606 (citing *Hernandez*, 47 Cal. 4th at 287). This calculus "focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *Id*.

Defendants' conduct in surreptitiously collecting IP addresses and other sensitive sexual data from millions of unsuspecting users and then sharing that data to third parties for their own gain is indeed "highly offensive." *See, e.g., Hill*, 7 Cal. 4th at 25 (1994) (holding that an individual has "the right to define one's circle of intimacy—to choose who shall see beneath the quotidian mask. Loss of control over which 'face' one puts on may result in literal loss of self-identity, and is humiliating beneath the gaze of those whose curiosity treats a human being as an object") (emphasis in original). Here, Defendants' treatment of Plaintiffs as a source of data to be exploited is highly offensive. Indeed, the private information Defendants misappropriate and leverages for their own financial benefit is not mere record or numerical data, as Defendants suggest. It is highly-sensitive private information that, when aggregated, allows Defendants and third parties like Google to build detailed profiles of unique Website users across the internet, including their geographic and online activity histories. *See* FAC ¶¶ 32, 36, 40, 57-60, 84-85, 94. This information includes unquestionably personal information, including explicit video titles, sexual orientation preferences, detailed scene-specific descriptors (e.g. "amateur" or "doggy style"), and the actual search terms entered by users. *Id.* ¶¶ 43-45.

//

//

Regardless, given this fact-intensive inquiry, the question of "[w]hether the conduct was highly offensive can rarely be resolved at the pleading stage." *In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d at 946 (citing *Facebook Tracking*, 956 F. 3d at 606); *Opperman v. Path, Inc.,* 205 F.Supp.3d 1064, 1079-80 (N.D. Cal. 2016) (noting that customs and habits are very much in flux, tracking technology is still changing, and "a judge should be cautious before substituting his or her judgment for that of the community"); *Mitchell*, 24-CV-434574, Op., at p. 2 (whether conduct was "highly offensive" in pen register case is a question of fact that cannot be resolved by the Court at this time."); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 943 (N.D. Cal. 2023) ("'Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is'") (quoting *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019)); *Toy v. Life Line Screening of Am. Ltd*., No. 23-CV-04651-RFL, 2024 WL 1701263, at *3 (N.D. Cal. Mar. 19, 2024) ("The complaint plausibly alleges that Toy had a reasonable expectation of privacy in her use of at-home health tests provided by Life Line, and whether Life Line's alleged intrusion by disclosing that sensitive information to Facebook and/or Google was highly offensive is an issue not suitable for decision on the pleadings").

## II. THIS COURT HAS JURISDICTION OVER DEFENDANTS AYLO HOLDINGS, AYLO GLOBAL, AND AYLO USA

Defendants argue that Plaintiffs have not demonstrated that this Court has personal jurisdiction over Aylo Holdings, Aylo Global, and Aylo USA, which effectively concedes that the Court has jurisdiction over Aylo Freesites and 9219-1568 Quebec. Specifically, they insist that the FAC's alter ego allegations do not provide sufficient facts to: (1) suggest that Plaintiffs cannot be "made whole" by the other Defendants, Aylo Freesites and 9219-1568 Quebec (MTD, at 19-20); or (2) disturb the entities' "corporate separateness" (*id.*, 21-22)." Their points, however, are

irrelevant because this Court has jurisdiction over Aylo Holdings, Aylo Global, and Aylo USA through California's "representative services" doctrine.

### A. The Court Has Jurisdiction Over Aylo Holdings, Aylo Global, and Aylo USA Under The Representative Services Doctrine

As this Court recently observed, federal courts "'follow state law in determining the bounds of their jurisdiction over person.'" *Fleites v. MindGeek S.A.R.L.*, 2025 WL 2902301, at *24 (C.D. Cal. Sept. 26, 2025) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). California recognizes the representative services doctrine, an extension of the agency theory, which "permits a court to exercise jurisdiction over a foreign company 'when the local subsidiary performs a function that is compatible with, and assists the parent in the pursuit of, the parent's own business.'" *Hawaiian Airlines, Inc. v. Mankiewicz Coating, LLC*, 2015 WL 13284946, at *3 (C.D. Cal. Sept. 11, 2015) (quoting *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 543 (2000)). Under this doctrine, there is jurisdiction where the foreign entity "purposefully availed itself of the privilege of doing business in the forum" through the subsidiary. *Sonora Diamond Corp.*, 83 Cal. App. 4th at 543.[4]

Here, the FAC provides that "there is evidence that before the defendants were rebranded as Aylo, they operated together as the owners and operators of Pornhub." Compl., ¶ 22 (citing the Deferred Prosecution Agreement, filed December 21, 2023, in *United States v. Aylo Holdings S.à.r.l.*, No. 1:23-cr-00463 (E.D.N.Y.) ("Deferred

---

[4] In *Fleites*, the Court only addressed the alter ego doctrine, which, as noted above, is distinct from California's representative services doctrine." *See Fleites*, 2025 WL 2902301, at *25-26; *Hawaiian Airlines, Inc.*, 2015 WL 13284946, at *3 (distinguishing the alter ego doctrine from California's "representative services doctrine"); *Sonora Diamond Corp.*, 83 Cal. App. 4th at 537-540 (analyzing allegations under the alter ego doctrine), 542-545 (analyzing allegations under the representative services doctrine)).

Prosecution Agreement”).)[5] Specifically, Defendants admitted in the Deferred Prosecution Agreement that they were, together, a “global, privately held group of entities . . . in the business of which included the maintenance and operation of websites that enabled third parties to post and distribute adult videos,” with “websites and brands including Pornhub.com.” Deferred Prosecution Agreement, Attachment B (¶ 1). The Deferred Prosecution Agreement did not distinguish between the entities and, indeed, the Criminal Information portion of the Deferred Prosecution Agreement provided that Defendants, as a whole, “had offices with employees in Montreal, Canada, and, among other places, ***Los Angeles, California***.” *Id.*, Attachment B (¶ 2) (emphasis added). Among other things, the Deferred Prosecution Agreement also establishes that Aylo Holdings’ Board of Managers had the authority and prerogative to not only bind all Defendants, but the responsibility to manage and ensure that all Defendants comply with the terms of the Deferred Prosecution Agreement. *See id.*, Attachment A. Clearly, if Aylo Holdings, Aylo Global, and Aylo USA were not significantly involved in the operation of Pornhub, they would not have been named nor would they have made such admissions in the Deferred Prosecution Agreement.[6]

---

[5] Plaintiffs inadvertently did not file the Deferred Prosecution Agreement with the FAC, so submits it contemporaneously with this brief for the Court’s convenience. *See* Shamberg Decl., Exhibit A. Defendants’ admissions in the Deferred Prosecution Agreement are also admissible as the opposing parties’ statements under Federal Rule of Evidence 801(d)(2).

[6] These collective admissions contradict and supersede Defendants’ representations that Aylo Holdings, Aylo Global, and Aylo USA had only limited roles that purportedly excluded them from directing and operating Pornhub and separated them from Aylo Freesites and 9219-1568 Quebec’s undisputed contacts with California giving rise to this action. *See Fleites*, 2025 WL 2902301, at *24. (“[c]onflicts between parties over statements contained in affidavits must be resolved in [Plaintiff’s] favor”) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) and citations in original).

Accordingly, the FAC provides more than sufficient evidence that Aylo Freesites and/or 9219-1568 Quebec were merely Defendants' "representative(s)" in California such that jurisdiction is proper under the representative services doctrine. *See, e.g.*, *Hawaiian Airlines, Inc.*, 2015 WL 13284946, at *3 (applying the "representative services doctrine" and finding jurisdiction where subsidiary was effectively the medium through which the "high level employees" of the parent "communicated" and "made changes to the . . . contract"); *Gourdine v. Karl Storz Endoscopy-Am., Inc.*, 223 F. Supp. 3d 475, 497 (D.S.C. 2016) (applying California law and finding jurisdiction under the representative services doctrine because "[t]he services of KST subsidiaries such as KSEA are essential to Karl Storz's unitary enterprise of selling Karl Storz products"); *Dorel Indus., Inc. v. Superior Ct.*, 134 Cal. App. 4th 1267, 1280 (2005) (applying representative services doctrine to Canadian parent company because it "used its U.S. subsidiary to design and manufacture the car seats, a task it otherwise would have done itself, to meet the demands of its Canadian customers"); *see also Paramount Farms, Inc. v. Ventilex B.V.*, 735 F. Supp. 2d 1189, 1211-12 (E.D. Cal. 2010), *aff'd*, 500 F. App'x 586 (9th Cir. 2012) (denying summary judgment on representative services doctrine, where, among other things, "[f]actual issues arise whether Ventilex USA was a mere sales arm of Ventilex BV").[7]

//

//

//

//

//

---

[7] To the extent the Court requires any additional evidence to support extending jurisdiction, Plaintiffs respectfully request that they be permitted targeted discovery on the issue. *See Fleites v. MindGeek S.A.R.L.*, 2022 WL 4455558, at *4 (C.D. Cal. July 29, 2022).

### B. Plaintiffs Are Not Required To Plead That A Lack Of Corporate "Separateness" Or "Fraud Or Injustice" Under The Representative Services Doctrine, But There Will Be An Inequitable Result If Aylo Holdings, Aylo Global, and Aylo USA Are Dismissed

Unlike the alter ego doctrine, the representative services doctrine does not require Plaintiffs to establish a "disregard of corporate separateness" or that fraud or injustice would result unless jurisdiction is extended. *See, e.g.*, *Sonora Diamond Corp.*, 83 Cal. App. 4th at 538, 542-43; *Hawaiian Airlines, Inc.*, 2015 WL 13284946, at *3. Regardless, fraud or injustice will result if Aylo Holdings, Aylo Global, and Aylo USA are not parties to this action.

As indicated in the Deferred Prosecution Agreement, Defendants operated as a "global, privately held group of entities . . . in the business of which included the maintenance and operation of websites that enabled third parties to post and distribute adult videos," with "websites and brands including Pornhub.com." Deferred Prosecution Agreement, Attachment B (¶ 1). As such, Aylo Holdings, Aylo Global, and Aylo USA are just as culpable as Aylo Freesites and 9219-1568 Quebec for the misconduct alleged in the FAC, so fraud or injustice will result if they are dismissed without facing Plaintiffs' substantive allegations.

Moreover, as discovery has not begun at this time, Aylo Freesites and 9219-1568 Quebec have yet to disclose the extent of their authority, access, and control of witnesses and documents relevant to Plaintiffs' claims. This means that if Aylo Holdings, Aylo Global, and Aylo USA are not in this action and Aylo Freesites and 9219-1568 Quebec represent that certain relevant witnesses and documents are under the former entities' authority, control, or possession, then Plaintiffs will, even if ultimately successful, be forced to take costly and time-consuming measures to reach them. *Cf. Sonora Diamond Corp.*, 83 Cal. App. 4th at 539 ("The alter ego doctrine does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the

corporate owner to hide behind the corporate form”). Accordingly, premature dismissal of Aylo Holdings, Aylo Global, and Aylo USA will likely result in an inequitable outcome.

## CONCLUSION

For the foregoing reasons, Defendants’ Motion to Dismiss should be denied in its entirety. To the extent the Court finds any deficiencies with the FAC, Plaintiffs respectfully request that they be permitted to amend and address such issues. *See David Ball v. The Standard Fire Ins. Co.*, 2025 WL 2633067, at *2 (C.D. Cal. June 6, 2025)(“‘leave to amend should be ‘freely given’”*)* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Dated: November 6, 2025

Respectfully submitted,

*/s/ Kolin C. Tang*
James C. Shah (SBN #260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN #279834)
Email: kctang@millershah.com
**MILLER SHAH LLP**
8730 Wilshire Blvd., Suite 400
Los Angeles, CA 90211
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

Kyle Shamberg (admitted *PHV*)
**Carroll Shamberg LLC**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
kyle@csclassactions.com
(872)215-6205

*Attorneys for Plaintiff and the Putative Class*

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief, excluding the caption, the table of contents, the table of authorities, the signature block, and this certification, contains 4,651 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 6, 2025

/s/ *Kolin C. Tang*
Kolin C. Tang