Nada I. Shamonki (SBN 205359)
NIShamonki@mintz.com
Nadia Zivkov (SBN 342509)
NAZivkov@mintz.com
**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**
2049 Century Park East, Suite 300
Los Angeles, CA 90067
Telephone: (310) 586-3200
Facsimile: (310) 586-3202

*Attorneys for Defendants*
*Aylo Freesites Ltd, Aylo Holdings S.à r.l., 9219-1568 Quebec Inc., Aylo USA Incorporated, and Aylo Global Entertainment Inc.*

[*Additional Counsel on Next Page*]

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SCOTT ADAIR, KENT HENDERSON, and TARRIS WALLACE, individually and on behalf of a class of similarly situated individuals,

Plaintiffs,

v.

AYLO FREESITES LTD., a foreign entity, AYLO HOLDINGS S.A.R.L., a foreign entity, 9219-1568 QUEBEC, INC., a foreign entity, AYLO USA INCORPORATED and AYLO GLOBAL ENTERTAINMENT, INC,

Defendants.

Case No. 2:25-cv-06351-WLH-KS

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

Assigned to the Hon. Wesley L. Hsu

Hearing
Date: January 9, 2026
Time: 1:30 p.m.
Location: 350 W. First Street
Courtroom 9B, 9th Floor
Los Angeles, CA 90012

Amended Complaint filed: September 8, 2025
Case removed: July 11, 2025
Trial date: November 16, 2026

Christopher A. Lisy (admitted *pro hac vice*)
CALisy@mintz.com
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.**
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241

Seth R. Goldman (admitted *pro hac vice*)
SRGoldman@mintz.com
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.**
919 Third Avenue
New York, NY 10022
Telephone: (212) 935-3000
Facsimile: (212) 983-3115

*Attorneys for Defendants*
*Aylo Freesites Ltd, Aylo Holdings S.à r.l., 9219-1568 Quebec Inc., Aylo USA Incorporated, and Aylo Global Entertainment Inc.*

**TABLE OF CONTENTS**

**Page**

I. Plaintiffs' Opposition Confirms Their Claims Fail on the Merits for Multiple Reasons. .... 1

A. IP addresses are not personally identifiable under Ninth Circuit law, and Plaintiffs' allegations here reveal why. .... 1

B. Plaintiffs do not allege Google uses the data to enrich itself, and so their claims are barred by the party exception. .... 3

C. Parroting the terms "intercepted," "real time," and "in transit" does not satisfy Rule 8. .... 4

D. Plaintiffs' conclusory and missing allegations do not meet their burden to plead lack of consent. .... 5

E. Plaintiffs do not dispute that tracking of web browsing is ubiquitous, and reasonable users understand as much. .... 7

II. None of Plaintiffs' Various Theories of Personal Jurisdiction Meets Their Burden. .... 8

A. Plaintiffs have alleged no relevant contacts between Aylo Holdings, Aylo Global, or Aylo USA and the forum. .... 8

B. The representative-services doctrine is an agency theory that has been rejected by the Supreme Court. .... 9

C. Plaintiffs cannot establish an alter-ego theory either because they have alleged no pervasive control or cognizable fraud or injustice. .... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Activision Publ'g Inc. v. EngineOwning UG*, 2023 WL 3272399 (C.D. Cal. Apr. 4, 2023) .......... 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 4, 5

*Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909 (9th Cir. 2011) .......... 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 5

*Bradshaw v. Lowe's Co.*, 2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) .......... 2

*Cairo, Inc. v. Crossmedia Servs.*, 2005 WL 756610 (N.D. Cal. Apr. 1, 2005) .......... 5

*Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287 (9th Cir. 1997) .......... 11

*Cloud B, Inc. v. Glopo, Inc.*, 2014 WL 13149468 (C.D. Cal. June 5, 2014) .......... 5

*Cobbler Nev., LLC v. Gonzales*, 901 F.3d 1142 (9th Cir. 2018) .......... 2

*Cooper v. Technogym, S.p.A.*, 2022 WL 17333341 (Cal. Ct. App. Nov. 30, 2022) .......... 10, 11

*Crim. Prods., Inc. v. Doe-72.192.163.220*, 2016 WL 6822186 (S.D. Cal. Nov. 18, 2016) .......... 2

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) .......... 10

*Emps. Ins. of Wausau v. Granite State Ins.*, 330 F.3d 1214 (9th Cir. 2003) .......... 10

*Fleites v. MindGeek S.A.R.L.*,
2025 WL 2902301 (C.D. Cal. Sept. 26, 2025) .... 12

*Garcia v. Enter. Holdings*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) .... 5, 7

*Gourdine v. Karl Storz Endoscopy-Am.*,
223 F. Supp. 3d 475 (D.S.C. 2016) .... 10

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .... 3, 4

*Gucci Am. v. Bank of China*,
768 F.3d 122 (2d Cir. 2014) .... 12

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .... 8

*Hawaiian Airlines v. Mankiewicz Coating, LLC*,
2015 WL 13284946 (C.D. Cal. Sept. 11, 2015) .... 10

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) .... 7

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .... 2

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .... 2

*Jeong v. Nexo Fin. LLC*,
2022 WL 174236 (N.D. Cal. Jan. 19, 2022) .... 12

*Jones v. Tonal Sys.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) .... 4

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .... 7

*Lockhart v. United States*,
577 U.S. 347 (2016) .... 6

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .... 7

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) .......... 7

*Mikulsky v. Noom, Inc.*,
2024 WL 251171 (S.D. Cal. Jan. 22, 2024) .......... 3

*O.T. v. Babybjörn AB*,
2021 WL 4861447 (C.D. Cal. Sep. 8, 2021) .......... 12

*Perez v. Romantix Online, Inc.*,
2025 WL 3085786 (N.D. Cal. Oct. 27, 2025) .......... 5, 6

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) .......... 8, 11

*Sonora Diamond Corp. v. Superior Ct.*,
83 Cal. App. 4th 523 (2000) .......... 9, 10, 11

*United States v. Acevedo-Lemus*,
2016 WL 4208436 (C.D. Cal. Aug. 8, 2016) .......... 2

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 1

*United States v. Kvashuk*,
29 F.4th 1077 (9th Cir. 2022) .......... 2

*Yamashita v. LG Chem, Ltd.*,
62 F.4th 496 (9th Cir. 2023) .......... 9

**Statutes and Regulations**

Cal. Civ. Code § 1798.140(v)(1) .......... 2

45 C.F.R. § 164.514(b)(2)(i)(O) .......... 3

Plaintiffs' Opposition is as tellingly silent as their Amended Complaint. Plaintiffs do not dispute there is generally no reasonable expectation of privacy in anonymized web-browsing data. And because their Amended Complaint fails to allege anything that makes their data personally identifiable, that alone dooms their claims. Their claims fail for other equally dispositive reasons, too. They do not allege (as they must) that Google aggregated the data collected for sale to parties other than Pornhub. They do not allege any facts supporting their claim that their communications were read "in transit." And, despite being challenged, they still do not allege the simple fact that they had never seen Pornhub's Privacy Policy before. Their claims for discovery in the face of these clear pleading defects ignore their burden under the Federal Rules to allege facts supporting their claim to relief *before* they are entitled to discovery.

Plaintiffs' varied theories and unspecific evidence also do not meet their burden of demonstrating personal jurisdiction over Aylo Holdings, Aylo Global, or Aylo USA. Plaintiffs offer no evidence establishing jurisdiction under the traditional test as to those entities. They rely on a doctrine abrogated by the Supreme Court. They otherwise make only speculative claims of fraud or injustice, which do not advance their seemingly abandoned alter-ego theory (which was rejected by this Court only a month ago in another matter).

## I. PLAINTIFFS' OPPOSITION CONFIRMS THEIR CLAIMS FAIL ON THE MERITS FOR MULTIPLE REASONS.

### A. IP addresses are not personally identifiable under Ninth Circuit law, and Plaintiffs' allegations here reveal why.

Plaintiffs do not dispute that there is no reasonable expectation of privacy in anonymized web-browsing data. (*See* Mot. 6–7; Opp'n 7.) Instead, Plaintiffs claim they have a reasonable expectation of privacy in their IP addresses, and that their IP addresses somehow allow their web-browsing data to be linked to them. (Opp'n 7.)

There are, however, a trove of cases holding they have no reasonable expectation of privacy in IP addresses. *See, e.g.*, *United States v. Forrester*, 512 F.3d

500, 510 (9th Cir. 2008); *Bradshaw v. Lowe's Co.*, 2025 WL 3171740, at *5 (S.D. Cal. Nov. 12, 2025) (collecting cases).

Moreover, as the Ninth Circuit has recognized, Plaintiffs' contentions about IP addresses are implausible.[1] In *Cobbler Nev., LLC v. Gonzales*, 901 F.3d 1142, 1145-46 (9th Cir. 2018), a copyright infringement action, the court recognized that "multiple devices and individuals may be able to connect via an IP address" and "multiple devices can access the internet under the same IP address." Thus, more than just an IP address is required "to create a reasonable inference that a subscriber is also an infringer." *Id.* Even California law cited by Plaintiffs acknowledges that IP addresses only "could" "indirectly" link to a "household." *See* Cal. Civ. Code § 1798.140(v)(1).[2]

Indeed, IP addresses change constantly and (without more) are not identifiable to an individual. *See Crim. Prods., Inc. v. Doe-72.192.163.220*, 2016 WL 6822186, at *2 & n.2 (S.D. Cal. Nov. 18, 2016) ("[m]ost consumer IP addresses are 'dynamic,'" which means "a person using a particular IP address one month may not have been the same person using it the next" (cleaned up)). IP addresses are assigned by providers "when [a device] connects to a particular network, and that IP address may change if the computer connects to a different network." *United States v. Acevedo-Lemus*, 2016 WL 4208436, at *5 (C.D. Cal. Aug. 8, 2016); *see United States v. Kvashuk*, 29 F.4th 1077, 1084 n.4 (9th Cir. 2022) (if a user connects via a virtual

---

[1] Plaintiffs (at 8) selectively quote *In re Google RTB Consumer Privacy Litigation*, 606 F. Supp. 3d 935 (N.D. Cal. 2022). That case involved much more than IP addresses to compile "unique profiles" of specific individuals. (Opp'n 8.) There, the plaintiffs alleged that Google sold "highly specific information about the target … including data *that identifies the individual being targeted* through unique identifiers, device identifiers, geolocation, IP address, cookie match, and other information." *Id.* at 939 (emphasis added). The same is true of *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) (Facebook was alleged to be "correlating users' browsing history with users' *personal Facebook profiles*").

[2] Plaintiffs cite to the California Consumer Privacy Act's definition of "personal information" as encompassing IP addresses, but Plaintiffs do not bring a CCPA claim here.

private network, then the IP address that appears to the website will be the VPN's, not that of the user's device). And Plaintiffs here allege they visited Pornhub "in or near [their] home[s]," (¶¶99, 100, 101), meaning from different networks that are even less identifiable. Even federal HIPAA regulations recognize that IP addresses are not specific to individuals, but rather may relate to "relatives, employers, or household members." 45 C.F.R. § 164.514(b)(2)(i)(O).

The remaining "personal" data Plaintiffs allege still does not identify *them*. (Opp'n 9; ¶3 (identifying titles of videos viewed, descriptors of videos, search terms, and category selections).) Plaintiffs have not suffered any invasion of privacy where those data points were collected and disclosed anonymously, as they allege here. *See, e.g.*, *Mikulsky v. Noom, Inc.*, 2024 WL 251171, at *4 (S.D. Cal. Jan. 22, 2024) (dismissing CIPA claim for lack of standing because there is no "protectible privacy interest" in "non-individually identifiable data"). (*See* Mot. 6-7 (collecting cases).)

**B. Plaintiffs do not allege Google uses the data to enrich itself, and so their claims are barred by the party exception.**

Plaintiffs do not dispute that their CIPA claim fails to the extent premised on the Adtng and Etahub trackers. (Opp'n 9.) Nor do they dispute the party exception, under which website operators may use third-party software to record interactions on websites without violating CIPA. (Mot. 8-9 (collecting cases).)

Instead, Plaintiffs claim Google does not fall within the party exception because Google and Pornhub "are two entirely separate entities with their own business interests and motivations." (Opp'n 9.) That may be true, but it is irrelevant. By definition under the party exception, the website operator is using a third-party software provider -- a "separate entit[y] with [its] own business interests and motivations" -- to provide services. *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021) (no CIPA violation where third-party vendor "provide[d] a software service that captures its clients' data … and allow[ed] the clients to analyze their data"). Plaintiffs do not allege that Google aggregated the data for resale or used

the data to serve targeted advertising elsewhere. Instead, Plaintiffs allege that Pornhub used Google to provide marketing and advertising (¶¶55-60) and analytics services (¶¶54, 57) *for Pornhub*. That Google analyzed the data to provide those services is irrelevant. That is precisely what happened in *Graham*: FullStory was "Noom's vendor for analyzing its website traffic." 533 F. Supp. 3d at 828.

Plaintiffs also claim that Defendants "do not argue that there was no disclosure with respect to the camschat.net and hot123.com Trackers." (Opp'n 9.) But Defendants did. (Mot. 9-10.) Those "other" trackers are alleged to enable Aylo to build market intelligence. (¶¶84-85.) Third-party analytics providers may do so without violating CIPA. (*See* Mot. 8-9.)

**C. Parroting the terms "intercepted," "real time," and "in transit" does not satisfy Rule 8.**

Plaintiffs' Amended Complaint contains nothing beyond conclusory allegations that any communications were intercepted "in transit" under CIPA, and their Opposition does not change this fact. It is black-letter law that "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Parroting the terms "intercept," "real time," and "in transit" does not meet the pleading standard of Rule 8. *See, e.g.*, *Jones v. Tonal Sys.*, 751 F. Supp. 3d 1025, 1037 (S.D. Cal. 2024). (Mot. 10 (collecting cases).)

Plaintiffs instead claim they satisfy the pleading standard because others alleging claims based on different technology have. (Opp'n 11.) However, Plaintiffs cannot base their claims on allegations made by others that are not present here. For example, in *Doe v. Call-On Doc, Inc.* (cited by Plaintiffs), the plaintiffs alleged the pixels captured patients' email addresses and phone numbers while they were being entered into the website. 2025 WL 1677632, at *2 (S.D. Cal. June 13, 2025). And in *Valenzuela v. Nationwide Mutual Insurance* (also cited by Plaintiffs), the plaintiffs pointed to the pixel operator's own statements that the data provided "[r]eal-time insights" and were "*collected as it happens*." 686 F. Supp. 3d 969, 978 (C.D. Cal.

2023). Those sorts of factual allegations are not found here.

To remedy this, Plaintiffs suggest they should take discovery. (Opp'n 11.) But "*before* proceeding to discovery, a complaint must allege *facts* suggestive of illegal conduct." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007); *Cloud B, Inc. v. Glopo, Inc.*, 2014 WL 13149468, at *3 (C.D. Cal. June 5, 2014) ("the driving force behind *Twombly* and *Iqbal* was to make it more difficult to use a barebones complaint to open the gates to expensive discovery and force an extortionate settlement").

**D. Plaintiffs' conclusory and missing allegations do not meet their burden to plead lack of consent.**

Plaintiffs do not dispute that they must adequately plead they did not consent to any alleged interception. (Mot. 11-12.) They also do not dispute that a browsewrap agreement is enforceable if they had actual knowledge of the Privacy Policy. *Cairo, Inc. v. Crossmedia Servs.*, 2005 WL 756610, at *5 (N.D. Cal. Apr. 1, 2005) (browsewrap terms enforceable where plaintiff had actual or imputed knowledge of the terms).

Plaintiffs could have simply alleged that they never saw or read the Privacy Policy. Tellingly, they did not. Instead, they lodge legal conclusions, including that they were "not on notice" and "did not consent." (¶¶10, 13, 16.) Even those they attempt to couch as "factual" allegations miss the mark: they assert they were not prompted, and that "nothing on the screen alerted [them]" of a privacy notice. (*See* ¶¶ 9, 12, 15.) These mere descriptions of the website are insufficient. *See Perez v. Romantix Online, Inc.*, 2025 WL 3085786, at *3 (N.D. Cal. Oct. 27, 2025) (dismissing CIPA and invasion-of-privacy claims where website had a privacy policy, but plaintiffs pleaded only conclusion that they did not consent); *Garcia v. Enter. Holdings*, 78 F. Supp. 3d 1125, 1137 (N.D. Cal. 2015) (similar).

Plaintiffs next assert that the Privacy Policy was not sufficiently descriptive to notify that their data could be tracked for advertising purposes. (Opp'n 12.) But Pornhub's disclosure -- that it may "process" (defined to mean "collection")

"identifiers and website activity data … to analyze your use of, or interest in the content, products, or services, to display content and advertising tailored to your interests on Pornhub" -- discloses precisely what Plaintiffs allege here. (*See* ECF No. 28-5 at 18-19.) This sentence discloses the collection of web-browsing data to display advertising, which advertising is tailored to users' interests on Pornhub. *See Lockhart v. United States*, 577 U.S. 347, 351 (2016) ("[Q]ualifying words or phrases modify the words or phrases immediately preceding them and not words or phrases more remote" (citation omitted)).

As for the disclosure to Google, Plaintiffs do not dispute that the Privacy Policy makes clear that information may be disclosed. They instead posit that Google was limited in using the data. (Opp'n 12-13.) Yet they only reach that conclusion by selectively quoting from different sentences. In reality, the disclosure states: "These service providers have limited access to personal information needed to *perform their functions* but are not permitted to process such information for any other purposes." (ECF No. 28-5 at 20.) One of those functions is "marketing and advertising." (*Id.*) Plaintiffs have not alleged that Google has processed the data beyond necessary to "perform [its] function[]" of "marketing and advertising." (*See id.*)

Finally, Plaintiffs attempt to avoid the fact that Google expressly disclosed its tracking behaviors by foisting the burden onto Defendants to prove Plaintiffs' consent to the Google privacy policies. But *Plaintiffs* must plead lack of consent. *See Perez*, 2025 WL 3085786, at *3. Although they blame Defendants for failing to identify the version of the sign-up page and Google Privacy Policy in effect when they signed up for their Google accounts, Plaintiffs never alleged when they did so. Given Google's clear disclosures, which would have put Plaintiffs on notice of the precise data

collection they allege here, they must "must allege additional facts to support [their] claim." *See Garcia*, 78 F. Supp. 3d at 1137.[3]

**E. Plaintiffs do not dispute that tracking of web browsing is ubiquitous, and reasonable users understand as much.**

Plaintiffs fail to allege either element of their invasion-of-privacy claim. Plaintiffs do not meaningfully argue -- and thus have conceded -- that they generally have no reasonable expectation of privacy on the internet. (Mot. 14; Opp'n 14 (referring to section I(B)); Opp'n 9 (arguing (incorrectly) that they have a reasonable expectation of privacy in IP addresses, and stating baldly that they "plainly have a privacy interest" in other information).) As before, Plaintiffs do not dispute there is no reasonable expectation of privacy in anonymized data, which is all they have alleged here. *See supra* 1-3.

They also fail to allege the second element because they again do not dispute that the collection of web-browsing data is "routine commercial behavior that courts conclude does not state a claim for invasion of privacy." (Mot. 16 (collecting cases).) Nor do Plaintiffs explain how this *anonymized* information is "an egregious breach of social norms." *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *7-8 (N.D. Cal. Feb. 2, 2021) (dismissing claim for disclosure "without plaintiffs' knowledge and consent" of "app activity data [that] was not tied to any personally identifiable information, was anonymized, and was aggregated"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (disclosure of anonymized data "including a numeric code associated with a user" does not establish a serious invasion of privacy, even if potentially de-anonymizable).

[3] Plaintiffs also argue that it is inappropriate to consider Google's Privacy Policy, but courts regularly consider privacy notices at the pleading stage. *See Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1053 (N.D. Cal. 2025) (collecting cases where privacy policies were judicially noticed in privacy class actions).

While Plaintiffs claim this question is not ripe at the pleading stage, countless courts have disagreed. *See, e.g.*, *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) ("Courts do in fact, decide the 'highly offensive' issue as a matter of law at the pleading stage when appropriate."); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (Breyer, J.) (dismissing claim for failure to allege highly offensive invasion of privacy).

## II. NONE OF PLAINTIFFS' VARIOUS THEORIES OF PERSONAL JURISDICTION MEETS THEIR BURDEN.

Plaintiffs' Opposition presents a mishmash of jurisdictional theories. None has merit, legally or factually, in demonstrating personal jurisdiction over Aylo Holdings, Aylo Global, or Aylo USA.

### A. Plaintiffs have alleged no relevant contacts between Aylo Holdings, Aylo Global, or Aylo USA and the forum.

Plaintiffs' "evidence" does nothing to dispute Defendants' specific, testimonial evidence that Aylo Holdings, Aylo Global, and Aylo USA have no involvement in the activity giving rise to Plaintiffs' alleged claims.[4]

Plaintiffs rely on an unrelated Deferred Prosecution Agreement ("DPA") to establish that Defendants "operated together as the owners and operators of Pornhub."[5] (Opp'n 17.) But the DPA says that the Aylo "group of entities" engaged in "the maintenance and operation of *websites* that enabled third parties to post and distribute adult videos," with "websites and brands *including* Pornhub.com." (ECF No. 35-2, ¶1.) Defendants' evidence acknowledges that an entity in the Aylo "group of entities" -- specifically Aylo Freesites -- operates Pornhub. (Andreou Decl. ¶7.)

---

[4] Plaintiffs' Opposition does not reveal the theory of jurisdiction on which they rest. But they make no attempt to meet the "exacting standard" of general jurisdiction, *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015), so Defendants assume Plaintiffs invoke specific jurisdiction.

[5] Aylo Holdings S.à r.l. was formerly known as MindGeek S.à r.l.

Plaintiffs thus do not (as they must) support their incorrect allegation that Aylo Holdings, Aylo Global, and Aylo USA "operate[]" Pornhub. *See Activision Publ'g Inc. v. EngineOwning UG*, 2023 WL 3272399, at *4 (C.D. Cal. Apr. 4, 2023) (plaintiffs are "*required* to come forward with documentary evidence in [their] Opposition to [Defendants'] factual jurisdictional attack").

Plaintiffs also emphasize that the DPA states that the Aylo "group of entities" had offices in Los Angeles. (Opp'n 18.) But this was not specific as to any of Aylo Holdings, Aylo Global, or Aylo USA. Defendants do not dispute that *some* entities in the Aylo "group of entities" had offices in Los Angeles during the period relevant to the DPA -- but Aylo Holdings did not, and neither Aylo Global nor Aylo USA have since years before Plaintiffs filed their complaint. In any event, Plaintiffs have made no effort to tie any defendant's alleged California-based activities to their allegations. *See Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504, 506 (9th Cir. 2023) (contacts must give rise to plaintiffs' claim or be "close[ly] connect[ed]" to their injury to support specific jurisdiction).

As this Court well knows, another plaintiff recently engaged -- unsuccessfully -- in two years of scorched-earth jurisdictional discovery attempting to establish jurisdiction over Aylo Holdings. Plaintiffs have alleged nothing new or unique, and they cannot elevate their unfounded allegations of Aylo Global's and Aylo USA's involvement in the day-to-day operations of Pornhub beyond speculation. They cannot demonstrate jurisdiction over Aylo Holdings, Aylo Global, and Aylo USA.

### B. The representative-services doctrine is an agency theory that has been rejected by the Supreme Court.

Plaintiffs now claim, for the first time, that they can establish jurisdiction under the "representative services doctrine." (Opp'n 17.) This is a variant of the agency theory with materially identical standards. *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 543 n.11 (2000) (cited by Plaintiffs at 20):

| Agency Theory | Representative-Services Doctrine |
|---|---|
| "the subsidiary … performs services that are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services" | "the local subsidiary performs a function that is compatible with, and assists the parent in the pursuit of, the parent's own business" |
| *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 920 (9th Cir. 2011), *rev'd*, 571 U.S. 117 (2014) | *Sonora Diamond*, 83 Cal. App. 4th at 543 |

*See also Hawaiian Airlines v. Mankiewicz Coating, LLC*, 2015 WL 13284946, at *3 (C.D. Cal. Sept. 11, 2015) (cited by Plaintiffs) (using the agency theory and representative-services doctrine interchangeably in the court's analysis).

This theory was abrogated in *Daimler*. As the Court put it, "the inquiry into importance stacks the deck, for it will always yield a pro-jurisdiction answer." *Daimler AG v. Bauman*, 571 U.S. 117, 136 (2014). "Anything a corporation does through a[] … subsidiary … is presumably something that the corporation would do 'by other means' if the … subsidiary … did not exist." *Id.* The same is true of the representative-services doctrine. *See Cooper v. Technogym, S.p.A.*, 2022 WL 17333341, at *5 (Cal. Ct. App. Nov. 30, 2022) (unpublished) ("*Daimler* appears to reject the representative services doctrine or, at the least, directs courts to apply it narrowly.").[6] That is likely why Plaintiffs were able to conjure only a single post-*Daimler* case in the Ninth Circuit applying the theory. *See Hawaiian Airlines*, 2015 WL 13284946, at *3. But *Hawaiian Airlines* did not even mention *Daimler*, rendering it uninformative and unpersuasive at best.[7]

[6] Federal courts may consider unpublished California decisions, "even though such opinions have no precedential value," to interpret California law. *Emps. Ins. of Wausau v. Granite State Ins.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003).

[7] *Gourdine v. Karl Storz Endoscopy-Am.*, 223 F. Supp. 3d 475, 494, 497 (D.S.C. 2016) (cited by Plaintiffs), recognized it was applying an "agency" theory but did not acknowledge *Daimler*'s rejection of that theory. Its representative-services analysis was also dicta because the court found the alter-ego allegations sufficient. *Id.* at 493.

Even assuming it passes constitutional muster, the representative-services doctrine does not help Plaintiffs for three additional reasons. *First*, as Plaintiffs' own case confirms, the representative-services doctrine "does not support jurisdiction where the parent is merely a holding company whose only business pursuit is the investment in the subsidiary." *Sonora Diamond*, 83 Cal. App. 4th at 543 (holding there was no personal jurisdiction under representative-services doctrine over holding-company parent). Aylo Holdings is just that: a holding company. (Andreou Decl. ¶6.) *Second*, the doctrine applies to parents and subsidiaries, and Plaintiffs have not alleged that Aylo Global and Aylo USA are the subsidiaries of entities over which this Court has personal jurisdiction. *See Sonora Diamond*, 83 Cal. App. 4th at 543. *Third*, "[e]ven assuming the doctrine remains viable, it does not apply where, as here, the parent company did not control the day-to-day operations of the subsidiary and the two functioned as fully independent entities." *Cooper*, 2022 WL 17333341, at *5. Plaintiffs, as set forth below, have alleged nothing of the sort here.

### C. Plaintiffs cannot establish an alter-ego theory either because they have alleged no pervasive control or cognizable fraud or injustice.

Plaintiffs argue that, although they are not required to demonstrate any fraud or injustice to satisfy their representative-services theory, they have demonstrated it here. This argument, which appears to be an invocation of the alter-ego theory contained in their Amended Complaint, fails.

*First*, if Plaintiffs are relying on an alter-ego theory, Plaintiffs must plead not only fraud or injustice but also facts showing "total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own." *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997). Here, Plaintiffs have failed to present anything beyond conclusory allegations of "*pervasive control* over the subsidiary." *Ranza*, 793 F.3d at 1073 (requiring evidence that the "parent corporation dictates *every facet* of the subsidiary's business -- from broad policy decisions to routine matters of day-to-day operation");

*see also Jeong v. Nexo Fin. LLC*, 2022 WL 174236, at *10 (N.D. Cal. Jan. 19, 2022) (rejecting "conclusory allegations" "that Defendants 'collectively operat[e] and maintain[]'" a website in the face of specific denials); *O.T. v. Babybjörn AB*, 2021 WL 4861447, at *3 (C.D. Cal. Sep. 8, 2021) (rejecting "conclusory allegations" that "defendant[s] 'expressly or impliedly agreed to work with and assist each other'").

*Second*, Plaintiffs have not alleged "that failure to disregard [the entities' separate identities] would result in fraud or injustice." *Fleites v. MindGeek S.A.R.L.*, 2025 WL 2902301, at *26 (C.D. Cal. Sept. 26, 2025). Plaintiffs first claim it would be inequitable to allow Aylo Holdings, Aylo Global, and Aylo USA to be dismissed because they are "just as culpable as Aylo Freesites and 9219-1568 Quebec." (Opp'n 20.) Yet they do not explain why, especially considering they have failed to adduce any evidence that these entities engaged in any activity giving rise to their claims. Their broad (and unsupported) accusation of shared culpability is a thinly veiled attempt to short-circuit the jurisdictional analysis that Plaintiffs bear the burden of satisfying.

Plaintiffs next speculate that (1) there could be evidence in the possession of Aylo Holdings, Aylo Global, and Aylo USA that they need in discovery, and (2) that the remaining defendants will object to that discovery as not within their possession, custody, or control. This impermissibly reverses the jurisdictional order of operations: a federal court must have personal jurisdiction to compel discovery; it cannot assume personal jurisdiction merely because a party wants discovery. *See Gucci Am. v. Bank of China*, 768 F.3d 122, 141 & n.20 (2d Cir. 2014) (collecting cases). Nor do Plaintiffs base this claim on anything other than pure speculation -- which also has no basis in the record, since Plaintiffs have not presented any evidence that Aylo Holdings, Aylo Global, or Aylo USA had any involvement in the alleged actions giving rise to their claims.

* * *

Plaintiffs' Amended Complaint should be dismissed without leave to amend.

DATED: November 20, 2025

Respectfully submitted,

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY, AND POPEO, P.C.

By: *_/s/ Christopher A. Lisy_*

Christopher A. Lisy (admitted *pro hac vice*)
Seth R. Goldman (admitted *pro hac vice*)
Nada I. Shamonki
Nadia A. Zivkov

*Attorneys for Defendants Aylo Freesites Ltd, Aylo Holdings S.à r.l., 9219-1568 Quebec Inc., Aylo USA Incorporated, and Aylo Global Entertainment Inc.*

## LOCAL RULE 11-6.2 CERTIFICATION

The undersigned, counsel of record for Defendants, certifies that this brief contains 4,000 words, which complies with the word limit of L.R. 11-6.1.

Date: November 20, 2025

*/s/ Christopher A. Lisy*

Christopher A. Lisy