James C. Shah (SBN #260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN #279834)
Email: kctang@millershah.com
**MILLER SHAH LLP**
8730 Wilshire Blvd., Suite 400
Los Angeles, CA 90211
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

**[Additional Counsel in Signature Block]**

*Attorney for Plaintiffs and the Putative Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

SCOTT ADAIR, KENT HENDERSON, and TARRIS WALLACE, individually and on behalf of a class of similarly situated individuals,

*Plaintiffs,*

v.

AYLO FREESITES LTD., a foreign entity, AYLO HOLDINGS S.A.R.L., a foreign entity, 9219-1568 QUEBEC, INC., a foreign entity, AYLO USA INCORPORATED and AYLO GLOBAL ENTERTAINMENT, INC.

*Defendants.*

Case No. 2:25-cv-06351-WLH-KS

Assigned to: Hon. Wesley L. Hsu

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

Hearing Date: July 10, 2026

Time: 1:30 p.m.

Place: Courtroom 9B, 9th Floor
First Street U.S. Courthouse
350 W. First Street
Los Angeles, CA 90012

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

Introduction ........ 1

Argument ........ 3

I. Legal Standard ........ 3

II. Plaintiffs Did Not Use Google SSO to Sign in to Pornhub ........ 3

III. Users Do Not Unambiguously Manifest Assent to Pornhub's Terms of Service by Signing Up with Google SSO ........ 6

Conclusion ........ 9

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320 (9th Cir. 2015) ....................2

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) ....................3, 4

*Bielski v. Coinbase, Inc.*, 87 F.4th 1003 (9th Cir. 2023) ....................4

*Chabolla v. ClassPass Inc.*, 129 F.4th 1147 (9th Cir. 2025) ....................4, 5

*Cody v. Fullbeauty Brands, Inc.*,No. EDCV 25-1334-KK-SHKx, 2025 WL 2725639, 2025 U.S. Dist. LEXIS 195027 (C.D. Cal. Aug. 26, 2025) ....................7

*Doe v. Aylo Holdings*, No. 2:24-cv-03267-MCS-JPR, 2025 WL 1461138, 2025 U.S. Dist. LEXIS 98282 (C.D. Cal. Feb. 24, 2025) ....................8

*Granite Rock Co. v. Int'l Brotherhood of Teamsters, et al.*, 561 U.S. 287, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010) ....................3

*Harris v. Iheartmedia, Inc.*, No. 25-cv-06038-EKL, 2026 WL 194576, 2026 U.S. Dist. LEXIS 15564, at *5 (N.D. Cal. Jan. 6, 2026)....................6, 7

*Huynh v. Boom Shakalaka, Inc.*, 814 F.Supp.3d 1141 (C.D. Cal. 2026) ....................7

*Lim v. TForce Logs., LLC*, 8 F.4th 992 (9th Cir. 2021) ....................4

*Millar v. Express Techs. Ltd.,* No. 8:25-CV-01273-FWS-DFM, 2026 WL 638633 (C.D. Cal. Mar. 3, 2026)....................9

*Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220 (9th Cir. 2022) ....................4

*Robbins v. Mscripts, LLC*, No. 23-cv-01381-LB, 2023 U.S. Dist. LEXIS 156634 (N.D. Cal. Sept. 5, 2023) ....................5

*Sanford v. MemberWorks, Inc.*,
483 F.3d 956 (9th Cir. 2007) .....................................................................4, 6

*White v. PayPal Holdings Inc.*,
821 F.Supp.3d 1058 (N.D. Cal. 2026) ..........................................................5

## INTRODUCTION

Defendants[1] claim that Plaintiffs, Scott Adair and Kent Henderson ("Plaintiffs"), who have been Pornhub users for many years, both signed up for accounts on Pornhub approximately one month after filing a class action lawsuit representing unregistered users of the site and, coincidentally, happened to do so within four days of one another. The only evidence it offers are two screenshots from Pornhub's Customer Management Service ("CMS"), which purports to show only that Pornhub's own internal tracking system states that each Plaintiff "[h]as [a] confirmed email." *See* Declaration of Ibrahim Sabbagh ("Sabbagh Decl."), Exhibits 1-2. Defendants provide ***no*** documentary evidence whatsoever demonstrating that Plaintiffs in fact signed up using Google Single Sign-On ("SSO") or what sign-up flow they would have seen when doing so. Furthermore, while Mr. Sabbagh makes several conclusory claims about what Pornhub's "records" show (*i.e.*, that Plaintiffs "acknowledged" Pornhub's terms of service and "consented to" cookies), Sabbagh Decl. ¶¶ 18 and 24, none of these records have been produced.

Plaintiffs' evidence directly contradicts these claims. Not only do Plaintiffs have no knowledge of ever having seen the sign-up screen reflected in Exhibits 2 and 3 of the Declaration of Christoper A. Lisy ("Lisy Decl."), and at no time had any intent or desire to create any account whatsoever with Pornhub, neither of the Google Account Connections pages associated with their Google accounts, which identify all third-party sites to which the user has signed in using their Google credentials, includes Pornhub or any related site. *See* Declaration of Scott Adair ("Adair Decl."), ¶¶ 3, 6-8 and Exhibit 1 (filed concurrently herewith); Declaration of Kent Henderson ("Henderson Decl."), ¶¶ 3, 6-8 and Exhibit 1 (filed concurrently herewith). These

---

[1] In its May 19, 2026 motion to dismiss order, the Court granted the motion on personal jurisdiction grounds as to all defendants other than Aylo Freesites, Ltd. and Aylo USA Incorporated. ECF Doc. No. 58. Accordingly, the term "Defendants" as used herein refers to those two entities.

documents belie any argument that Plaintiffs simply "forgot" that they did this, at a time when they had no intention to do so and understood their responsibility to represent a class of unregistered users, and had visited the site for years and years prior without creating an account. Adair Decl. ¶¶ 2, 5; Henderson Decl. ¶¶ 2, 5.

To be sure, Plaintiffs cannot explain why Pornhub's internal CMS would identify them as having signed up through Google. However, the party seeking to compel arbitration has the burden under the FAA to show the existence of a valid, written agreement to arbitrate. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). In light of Plaintiffs' sworn testimony to the contrary, and corroborating documents reflecting the same, Defendants cannot carry their burden of demonstrating that Plaintiffs entered into a binding agreement to arbitrate by signing up for Pornhub accounts via Google SSO.

But even assuming, *arguendo*, that they could, Defendants cannot meet their burden of proving that Plaintiffs manifested unambiguous consent to ***Pornhub's*** Terms of Service. As the relevant screenshots show, there are two methods for an individual to create an account, either by signing up using an email and password, which Defendants do not claim Plaintiffs did, or through Google[2]:




[redacted]

---

[2] The explicit portion of this screenshot, which was originally submitted as Exhibit 3 to the Lisy Declaration, has been redacted in this brief.

After providing a user with prompts to enter an email and password, the screenshot includes a similarly grayed-out box that says "Sign Up." Separately, next to the Google logo, is a second option to "Sign up with Google." At the bottom of the page, slightly smaller text informs the user that "By signing up, you agree to our Terms and Conditions." Based on this layout, a reasonable person reading this screen would interpret "signing up" as entering an email and password and clicking the "Sign Up" button through Pornhub, not Google, which has ***its own*** privacy policy, terms and conditions, and other related documents. Nor have Defendants provided any documents or other evidence establishing what a user who clicks on the "Sign up with Google" option would have seen after clicking that button, or how that sign up flow would have informed the user as to what, exactly, he or she was agreeing to, if at all.

In order to enforce the alleged arbitration agreement here, the Court must find that Plaintiffs "unambiguously manifested" their assent to Pornhub's Terms of Service. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). Based on this screenshot, by signing up through Google (which, again the evidence shows Plaintiffs ***did not do***) users did not unambiguously manifest their assent to Pornhub's Terms of Service, and Defendants cannot carry their burden of showing that Plaintiffs affirmatively agreed to them, including any arbitration provision contained therein.

## ARGUMENT

### I. Legal Standard

Under the Federal Arbitration Act ("FAA"), courts resolve disputes over whether parties formed a contract with an agreement to arbitrate in the first instance. *Granite Rock Co. v. Int'l Brotherhood of Teamsters et al.*, 561 U.S. 287, 296, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010). Like any other contract, an arbitration agreement must be valid and enforceable and is subject to "generally applicable contract

defenses" like "fraud, duress, or unconscionability." *Lim v. TForce Logs., LLC*, 8 F.4th 992, 999 (9th Cir. 2021); *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023).

The "party seeking to compel arbitration[] must prove by a preponderance of the evidence that the parties formed an agreement to arbitrate." *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022). And the court must "give to the opposing party the benefit of all reasonable doubts and inferences." *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 963 (9th Cir. 2007).

In the case of a "sign-in wrap" agreement like the one asserted here, "the website provides a link to terms of use and indicates that some action may bind the user but does not require that the user actually review those terms." *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025). Absent proof that a consumer has actual knowledge of the agreement, a sign-in wrap agreement will be enforced only if "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at 856; *see also Chabolla*, 129 F.4th at 1158 ("Reasonable conspicuousness alone is not sufficient to bind a user - a user must agree to the terms, not merely see them").

## II. Plaintiffs Did Not Use Google SSO to Sign in to Pornhub

As Google explains, "Sign in with Google helps you easily and securely sign in to apps from developers other than Google with your Google Account. When you use Sign in with Google, you don't have to enter a username and password repeatedly across different linked apps."[3] With respect to apps or websites using the "Sign in with Google" button, "If you've never used Sign in with Google to sign in to the app,

---

[3] https://support.google.com/accounts/answer/12849458?hl=en&ref_topic=16666004&sjid=15940596515617851378-NC (last visited June 18, 2026).

it displays a non-personalized Sign in with Google button. This button prompts you to sign in. When you do so, you grant consent to share the name, email, and profile picture on your Google Account with the linked app."[4] Google account holders can review their linked apps at any time by visiting the Google Account Connections page.[5]

As the Adair and Henderson Declarations and exhibits attached thereto demonstrate, both Plaintiffs' Google Account Connections pages ***do not list Pornhub*** as an app or site to which they've signed in using Google. And Plaintiffs have declared subject to penalty of perjury that they have not removed Pornhub or any related site from that Account Connections page. Adair Decl. ¶ 9; Henderson Decl. ¶ 9. This evidence, which goes well beyond Plaintiffs' mere recollection of what did or did not occur, and is directly at odds with what Defendants, without similar supporting proof, claim happened. Defendants do not explain how their internal CMS logs are created or updated, from where and through what mechanism the information contained therein derives (for example, is it pulled directly from metadata, which has not itself been produced, or can it be input manually?), or how its accuracy is verified.

Because Plaintiffs have submitted concrete evidence directly refuting Defendants' factual assertions, Defendants have not met their burden of proving the existence of any valid agreement to arbitrate. *Cf. White v. PayPal Holdings Inc*., 821 F.Supp.3d 1058 (N.D. Cal. 2026) ("this Court concludes that plaintiffs' failure to provide competent evidence directly rebutting defendants' evidence fails to create a genuine issue as to the sign-up process that was presented to those plaintiffs when they created their accounts"); *Robbins v. Mscripts, LLC*, No. 23-cv-01381-LB, 2023 U.S. Dist. LEXIS 156634, 2023 WL 5723220, at *5 (N.D. Cal. Sept. 5, 2023)

---

[4] *Id.*
[5] *Id.*

(explaining that "without any contradicting evidence about what the plaintiff saw, the court is not precluded from concluding as a matter of law that the plaintiff was on notice of mscripts's terms and conditions when he created his account"); *Sanford.*, 483 F.3d at 963 (all doubts and inferences to be resolved in favor of the party opposing arbitration).

To the extent the Sabbagh Declaration makes further assertions as to what Plaintiffs did or did not do on Pornhub (such as consenting to cookies or browsing the site generally), those claims, which again have no supporting documentary or other evidentiary substantiation, are irrelevant to the question of whether Plaintiffs agreed to arbitrate their present claims against Defendants. The question is not whether Plaintiffs have visited the website – they have, for many years, without ever creating or wanting to create an account – it is whether they consented to Pornhub's Terms of Service by registering for a Pornhub account via Google SSO on July 5 and 9, 2025, respectively. They did not.

## III. Users Do Not Unambiguously Manifest Assent to Pornhub's Terms of Service by Signing Up with Google SSO

Even if Plaintiffs, or anyone else, ***had*** registered using Google SSO, they could not have unambiguously manifested assent to Pornhub's Terms of Service by doing so.

Judge Lee's ruling in *Harris v. Iheartmedia, Inc.*, No. 25-cv-06038-EKL, 2026 WL 194576, 2026 U.S. Dist. LEXIS 15564, at *5 (N.D. Cal. Jan. 6, 2026)is instructive. There, like here, the defendant claimed that the plaintiff had agreed to its terms & conditions, including an arbitration provision, by signing up for its website by clicking on a "Connect with Google" button. *Id.* at *6. Noting that the options to sign up for the website or connect with Google or Facebook were listed in separate columns, Judge Lee concluded:

> In sum, a user who created an iHeart account through Facebook or Google never directly encountered the notice

> stating that "by creating an account" the user agrees to the terms of service and privacy policy. Even if the user did see this language, it was not clear that proceeding through the "Connect With" function on a different section of the Sign-Up Page would bind the user to iHeart's terms. In addition, when the user continued to the Google registration flow page, there was no indication that, by clicking "Continue," the user would be bound by iHeart's Terms. Therefore, iHeart has not demonstrated that Plaintiff unambiguously manifested his assent to the 2024 Terms. iHeart's motion to compel arbitration is DENIED.

*Id.* at *11. Here, while the two separate options were not in different columns, they nevertheless offered two different methods for accessing the site, one explicitly based on signing up for a Pornhub account by entering an email and creating a password, and the other by clicking the Google logo next to the statement "Sign up with Google." Lisy Decl., Exhibits 2 and 3.

As in *Harris*, it is "not clear" that by signing up with Google a user is creating a Pornhub account to begin with, let alone agreeing to be bound by Pornhub's Terms of Service. And Defendants have not, as the defendant in *Harris* did, provided any documentation of what the Google registration flow looked like here.

The cases Defendants rely upon are distinguishable. *Huynh v. Boom Shakalaka, Inc*., 814 F.Supp.3d 1141 (C.D. Cal. 2026) did not involve signing up via Google or any other third party, and the plaintiff indisputably provided his phone number and email address, then clicked the only available "Sign Up" button. *Id.* at 1144. The facts there are more akin to a Pornhub user providing an email address and password and hitting the "Sign Up" button, rather than the "Sign up with Google" button. *Id.*

In *Cody v. Fullbeauty Brands, Inc*., No. EDCV 25-1334-KK-SHKx, 2025 WL 2725639, 2025 U.S. Dist. LEXIS 195027 (C.D. Cal. Aug. 26, 2025), the manifestation of intent, at the time of completing an apparel purchase on defendant's

website, was even more obvious, and the amount of information provided far more fulsome. *See id.* at *6 ("In order for Plaintiff to complete her purchase, Plaintiff 'went through the website's purchase process (or check-out process)[.]' The check-out process 'included navigation to the check-out page', which required Plaintiff to 'enter her contact information, shipping address, [] shipping method[,]' and 'payment information[.]' Plaintiff was also presented with the following text: 'By placing this order and/or creating an account, you agree to our **Terms of Use, Returns Policy**, and **Privacy Policy**'") (internal citations omitted) (emphasis in original). And, again, *Cody* did not involve any third-party sign up or connection process; instead, it involved a clear, unambiguous requirement that plaintiff consent to the linked agreements as a condition of ***completing a purchase from the defendant***.

Finally, *Doe v. Aylo Holdings*, No. 2:24-cv-03267-MCS-JPR, 2025 WL 1461138, 2025 U.S. Dist. LEXIS 98282 (C.D. Cal. Feb. 24, 2025), while involving the same Defendants named in this case, is entirely irrelevant, as the plaintiff there did not dispute, and in fact ***affirmatively alleged*** in the complaint, that she had had a Pornhub premium account since 2019, and it was ***plaintiff*** who initiated the arbitration demand. *Id.* at *10. The only question Judge Scarsi decided was whether the defendants had waived their right to have the plaintiff's claims heard in arbitration by not paying the required fees on time. *Id.* at *11. Here, of course, Plaintiffs expressly dispute the existence of any agreement to arbitrate.

Unlike these cases, a Pornhub user electing to enter the site through *Google* does not affirmatively manifest assent to *Pornhub's* Terms of Service. Accordingly, even if there was competent evidence that Plaintiffs had registered for a Pornhub account through that method, the Court should nevertheless find that they did not agree to arbitrate any claims by doing so.

## CONCLUSION

Defendants' motion to compel arbitration should be denied, as Plaintiffs' evidence demonstrates that they did not register for a Pornhub account using Google SSO as Defendants claim. Even if they had, however, the sign-up process Defendants proffer did not elicit any unambiguous manifestation of assent to Pornhub's Terms of Service. Accordingly, because all doubts and inferences must be resolved in Plaintiffs' favor, Defendants have not carried their burden of establishing the creation of any enforceable agreement to arbitrate.[6]

Dated: June 22, 2026

Respectfully submitted,

*/s/ Kolin C. Tang*
James C. Shah (SBN #260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN #279834)
Email: kctang@millershah.com
**MILLER SHAH LLP**
8730 Wilshire Blvd., Suite 400
Los Angeles, CA 90211
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

Kyle Shamberg (admitted *PHV*)
**Carroll Shamberg LLC**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
kyle@csclassactions.com
(872)215-6205

*Attorneys for Plaintiff and the Putative Class*

---

[6] Should the Court nevertheless grant the motion, Plaintiffs will request leave of Court to amend the operative complaint to substitute the class representatives in this matter, and will do so via the appropriate motion for leave to amend. *See Millar v. Express Techs. Ltd.,* No. 8:25-CV-01273-FWS-DFM, 2026 WL 638633, at *2 (C.D. Cal. Mar. 3, 2026) (granting motion for leave to amend to substitute class representative after initial plaintiff was compelled to arbitration).

**L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 2,474 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 22, 2026

*__/s/ Kolin C. Tang__*
Kolin C. Tang