Nada I. Shamonki (SBN 205359)
NIShamonki@mintz.com
Nadia Zivkov (SBN 342509)
NAZivkov@mintz.com
**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**
2049 Century Park East, Suite 300
Los Angeles, CA 90067
Telephone: (310) 586-3200
Facsimile: (310) 586-3202

*Attorneys for Defendants*
*Aylo Freesites Ltd. and 9219-1568 Quebec Inc.*

[*Additional Counsel on Next Page*]

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SCOTT ADAIR, KENT HENDERSON, and TARRIS WALLACE, individually and on behalf of a class of similarly situated individuals,

Plaintiffs,

v.

AYLO FREESITES LTD., a foreign entity, AYLO HOLDINGS S.A.R.L., a foreign entity, 9219-1568 QUEBEC, INC., a foreign entity, AYLO USA INCORPORATED and AYLO GLOBAL ENTERTAINMENT, INC,

Defendants.

Case No. 2:25-cv-06351-WLH-KS

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION**

Assigned to the Hon. Wesley L. Hsu

Hearing
Date: July 10, 2026

Time: 1:30 p.m.

Location: Courtroom 9B, 9th Floor
First Street U.S. Courthouse
350 W. First Street
Los Angeles, CA 90012

Amended Complaint filed: September 8, 2025
Case removed: July 11, 2025
Trial date: April 26, 2027

Christopher A. Lisy (admitted *pro hac vice*)
CALisy@mintz.com
**MINTZ LEVIN COHN FERRIS**
**GLOVSKY AND POPEO, P.C.**
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241

Seth R. Goldman (admitted *pro hac vice*)
SRGoldman@mintz.com
**MINTZ LEVIN COHN FERRIS**
**GLOVSKY AND POPEO, P.C.**
919 Third Avenue
New York, NY 10022
Telephone: (212) 935-3000
Facsimile: (212) 983-3115

*Attorneys for Defendants*
*Aylo Freesites Ltd. and 9219-1568 Quebec Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .......... 5
REPLY .......... 6
I. Plaintiffs' Denials Do Not Overcome the Corroborating Records Showing They Created Accounts on the Website Through Google SSO. .......... 6
A. Plaintiffs Do Not Explain the Account Evidence Tying Their Gmail Addresses to Website Accounts. .......... 6
B. Plaintiffs' Declarations, Screenshots, and Speculation Do Not Rebut Pornhub's Account Records. .......... 8
II. Plaintiffs Indeed Manifested Assent to the Website's Terms of Service and to Arbitrate "Any Disputes" – No Matter Which Sign-Up Method They Used. .......... 10
A. The Sign-Up Screen Provided Reasonably Conspicuous Notice That "Signing Up" Meant Accepting the Terms. .......... 10
B. Other Courts Have Enforced the Same Arbitration Provision. .......... 14
C. Regardless of How the Accounts Were Created, the Plaintiffs Manifested Assent to Arbitration. .......... 16
CONCLUSION .......... 16

# TABLE OF AUTHORITIES

**Federal Cases ..................................................................................Page(s)**

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022)................................................................ 10, 12

*Chabolla v. ClassPass Inc.*, 129 F.4th 1147 (9th Cir. 2025)................................................................ 10

*Cody v. Fullbeauty Brands, Inc.*, No. 5:25-cv-01334, 2025 U.S. Dist. LEXIS 195027 (CD Cal Aug. 26, 2025)................................................................ 13, 16

*Doe v. Aylo Holdings S.a.r.l.*, No. 2:24-cv-03267-MCS-JPR, 2025 U.S. Dist. LEXIS 98282 (C.D. Cal. Feb. 24, 2025) ................................................................ 15

*Harris v. iHeartMedia, Inc.*, No. 5:25-cv-06038, 2026 U.S. Dist. LEXIS 15564 (N.D. Cal. Jan. 6, 2026)................................................................ 11

*Huynh v. Boom Shakalaka, Inc.*, 814 F. Supp. 3d 1141 (C.D. Cal. 2026)................................................................ 10, 16

*Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112, 1119-20, 1124-25 (S.D. Cal. 2024). ................................ 14

*Moyer v. Chegg, Inc.*, No. 4:22-cv-09123-JSW, 2023 U.S. Dist. LEXIS 128352 (N.D. Cal. July 25, 2023). ................................................................ 8, 13

*M.S. v. Aylo Freesites, Ltd*, No. 2:25-cv-01139-MJC-JDP, 2026 U.S. Dist. LEXIS 118121 (E.D. Cal. May 27, 2026)................................................................ 14

*Rainey v. A Place for Rover, Inc.*, No. 2:22-cv-01810, 2022 U.S. Dist. LEXIS 208799 (C.D. Cal. July 18, 2022)................................................................ 13

## PRELIMINARY STATEMENT

Plaintiffs—who filed this lawsuit as purportedly unregistered Website users and class representatives for others who "never signed up" for Pornhub accounts—now face undisputed evidence that they are in fact registered Website users that signed up for accounts. Their opposition does not meaningfully dispute the evidence that proves this fact. Instead, Plaintiffs' opposition advances two propositions, and neither leads to a different conclusion.

*First*, Plaintiffs *say* they did not create Website accounts through the Google single sign-on process ("Google SSO"). But Defendants' records prove otherwise: the Gmail addresses Plaintiffs identified under oath were used to create accounts on the Website through Google SSO in July 2025. And these records are corroborated with substantial evidence: IP addresses consistent with Plaintiffs' locations, subsequent account activity, password-reset events triggered on the day Defendants' counsel disclosed the accounts to Plaintiffs' counsel, and—for Mr. Henderson—use of the same smartphone model he identified in discovery. Plaintiffs do not address any of this. Nor do Plaintiffs' Google Account Connections screenshots (which are replete with unexplained anomalies) explain away this evidence. At most, they show what appeared on select Google pages at the single moment when the screenshots were captured. They are not a complete historical record of every connection made through Google SSO, and the purported absence of a Pornhub entry is hardly dispositive.

*Second*, Plaintiffs argue that clicking "Sign up with Google" during the account creation process did not manifest assent to the Terms. This argument ignores the plain words on the screen and the page layout. The sign-up disclosure did not limit assent to users who registered with an email and password. Instead, it allowed users to sign up either by (1) submitting an email and creating a password or (2) signing up through Google. Under both options, the disclosure stated: "By signing up, you agree to our Terms and Conditions," with the Terms and Conditions conspicuously displayed and hyperlinked. Plaintiffs' authority is therefore distinguishable: their cases involved

materially different sign-up pages where the Google option was segregated and apart from any notice of applicable terms. Here, in contrast, the Google SSO option appeared in the same section with the notice, and numerous courts have found assent in that circumstance. Two other California federal courts have already enforced the same arbitration provision in the Website's Terms under similar circumstances. The Court should likewise compel Plaintiffs to arbitrate and stay this action.

## REPLY

### I. Plaintiffs' Denials Do Not Overcome the Corroborating Records Showing They Created Accounts on the Website Through Google SSO.

#### A. Plaintiffs Do Not Explain the Account Evidence Tying Their Gmail Addresses to Website Accounts.

Plaintiffs have no explanation for, and indeed do not even attempt to address, the substantial evidence proving that they created accounts on the Website. Instead, Plaintiffs rely solely on subjective recollection: they say they "have no recollection" of signing up for an account, and they provide Google account screenshots that, as shown below, are internally inconsistent.

Plaintiffs' declarations are therefore most notable for what they do not say. There is not a single paragraph in either of Plaintiffs' declarations that responds to the following undisputed facts established in the detailed declaration submitted by Pornhub's Vice President of Engineering, Ibrahim Sabbagh (Sabbagh Decl. ¶¶ 1-4):

**Plaintiff Adair**

- Plaintiff Adair has identified his email address as Sincereman69@gmail.com;
- Sincereman69@gmail.com was used to create an account on July 5, 2025;
- The IP address 172.115.210.0 was used at the time of registration when the Sincereman69@gmail.com email was used to create an account;
- The 172.115.210.0 IP address resolves generally to Oxnard, California, where Plaintiff Adair states he lives;
- The account associated with Plaintiff Adair's email twice triggered a reset password email on March 17, 2026; and

- There was subsequent account activity months after the account was created.

**Plaintiff Henderson**

- Plaintiff Henderson has identified his email address as khardboot@gmail.com;
- khardboot@gmail.com was used to create an account on July 9, 2025;
- The IP address 172.56.55.0 was used at the time of registration when the khardboot@gmail.com email was used to create an account;
- The 172.56.55.0 IP address resolves generally to Beverly Hills, California, near where Plaintiff Henderson states he lives;
- The account associated with Plaintiff Henderson's email triggered a reset password email on March 17, 2026;
- The account was used to access the Website on March 18, 2026 using a Galaxy Z Flip 6 device and Plaintiff Henderson has confirmed that he uses a "Samsung Galaxy Z Flip 6 smartphone"; and
- There was subsequent account activity, including content viewed, months after the account was created.

(Sabbagh Decl. ¶¶ 8-10, 13-14, 17, 19-20, 23, 30, 33, 35; Lisy Decl., Ex. 1.).

The password-reset attempts are especially telling. Each of the accounts generated a password-reset attempt on *the same day* that Defendants' counsel informed Plaintiffs' counsel that these accounts existed. (Sabbagh Decl. ¶¶ 31, 34; Lisy Decl. ¶ 8) Those password-reset emails were sent to Plaintiffs' Gmail accounts. Yet in their declarations, Plaintiffs do not address that timing—which would be a striking coincidence, to say the least—or the existence of the reset-password emails. They do not claim, for example, that they searched their records and have no record of the emails. Defendants submit they did not do so because they cannot dispute that Plaintiffs initiated the password-reset attempts. This is another indication that the accounts exist and are controlled by Plaintiffs.

Plaintiffs attempt to sidestep these issues by stating that Defendants have the burden to prove (by a preponderance of the evidence) that Plaintiffs agreed to

arbitrate. That is correct, but Defendants have more than satisfied that burden. In *Moyer v. Chegg, Inc.*, the court compelled arbitration where the defendant's account-creation evidence showed there was no genuine issue of fact concerning assent, and the plaintiff's contrary declaration did not dictate otherwise. 2023 U.S. Dist. LEXIS 128352, at *18-19 (N.D. Cal. July 25, 2023). The same is true here, where a mountain of corroborating and undisputed evidence proves Plaintiffs created their accounts.

### B. Plaintiffs Do Not Explain the Account Evidence Tying Their Gmail Addresses to Website Accounts.

Plaintiffs' sole documentary basis for disputing the account creation are screenshots of their Google Account Connections purporting to show the absence of a linkage to the Website. (Adair Decl., Ex. 1; Henderson Decl., Ex. 1.) Plaintiffs cite some Google support documents as context, but do not offer a technical explanation as to why the absence of a Pornhub entry in these screenshots is dispositive. In contrast, Defendants have provided substantial evidence from an engineer explaining why Plaintiffs' accounts do, in fact, exist and how they were created. (Sabbagh Decl. ¶¶ 8-10, 13-14, 17, 19-20, 23, 30).

At most, those screenshots show that the Website did not appear on selected Google Account pages at the exact time the screenshots were captured. The screenshots do not establish a complete, continuous, account-specific record of every connection ever made through Google SSO, which has been proven from the Website's records and Mr. Sabbagh's declaration. (Sabbagh Decl. ¶¶ 17, 23.) Defendants note that Plaintiffs provided no indication as to when the screenshots were captured.

There are other issues as well. While the first page of each of Plaintiffs' exhibits identify the email accounts in question (sincereman69@gmail.com and khardboot@gmail.com), the subsequent pages do not. Moreover, the timestamps do not reflect a single chronological sequence: pages that should follow one another

instead bear times several minutes apart and, in some instances, out of order. The first page of Mr. Adair's exhibit reflects a timestamp of 9:00, but the second and third page —which follow naturally in the sequence and therefore should bear an identical timestamp or at most one that is a minute later if the clock had rolled over—instead show timestamps of 8:50, minutes *earlier*. Likewise, the first page of Mr. Henderson's exhibit reflects a timestamp of 12:00, but the second and third pages bear timestamps of 12:17 and 11:26. (Adair Decl., Ex. 1; Henderson Decl., Ex. 1.) No explanation is provided for these discrepancies, which suggest that the screenshots were compiled from different sessions or dates, and are not a single, real-time capture of Plaintiffs' Google account status.

Nevertheless, Plaintiffs fault Defendants for not explaining every technical detail of CMS. They complain that "none of these records have been produced." (Opp. at 1.) But Mr. Sabbagh's sworn testimony about what the Website's records reflect is competent evidence. (Sabbagh Decl. ¶ 4, Exs. 1-2.) Plaintiffs' speculation about what additional records "might" show does not create a genuine dispute, particularly when Plaintiffs themselves have not addressed the undisputed corroborating evidence already before the Court. Mr. Sabbagh explains the two account-creation methods available in July 2025 (id. ¶¶ 5-7) and then applies that knowledge to the accounts at issue, stating that both accounts were created by signing up through a connection to the users' Google accounts (id. ¶¶ 17, 23). This is accompanied by, as explained above, facts proving the creation of the accounts—facts Plaintiffs do not even attempt to dispute. Plaintiffs' speculation about how CMS "might" operate does not overcome that testimony and the corroborating account records tied to Plaintiffs' own email addresses, locations, subsequent account activity, and device information.

## II. Plaintiffs Indeed Manifested Assent to the Website's Terms of Service and to Arbitrate "Any Disputes" – No Matter Which Sign-Up Method They Used.

### A. The Sign-Up Screen Provided Reasonably Conspicuous Notice That "Signing Up" Meant Accepting the Terms.

Plaintiffs' second argument, that clicking "Sign up with Google" did not manifest assent to the Website's Terms, misreads the sign-up screen and misapplies the objective assent standard.

Under California law, a sign-in wrap agreement is enforceable where "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022); *see also Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025). A click manifests assent when the user is explicitly advised that proceeding will constitute agreement to the terms. *Berman*, 30 F.4th at 857; *Huynh v. Boom Shakalaka, Inc.*, 814 F. Supp. 3d 1141, 1149 (C.D. Cal. 2026).

The Website's sign-up screen did exactly that and satisfies the standard, for the reasons set forth in Defendants' opening brief. Plaintiffs' purported distinction between email/password registration and Google SSO is unsupported by the words on the screen. The disclosure did not state "By signing up with an email address and password, you agree to our Terms and Conditions." It stated: "By signing up," without limiting that language to one registration method. (Lisy Decl., Exs. 2-3.) And the Google option itself was labeled "Sign up with Google." (*Id.*) A user who clicks a button labeled "Sign up" is signing up—the very action the disclosure identifies as manifesting assent. A reasonable user would understand that clicking a button labeled "Sign up with Google" is one way of signing up:




*Harris*, Plaintiffs' principal authority, addresses an interface problem that does not exist here. There, the hyperlinked terms appeared only in the left column of the sign-up page, below email-and-password fields and near a "Sign Up" button. *Harris v. iHeartMedia, Inc.*, 2026 U.S. Dist. LEXIS 15564, at *3-6 (N.D. Cal. Jan. 6, 2026). Critically, the Google option in *Harris* was labeled "Connect With," not "Sign up." The court emphasized this distinction, noting there was no indication that the user was signing up or creating an account. *Id.* at *9-10. The plaintiff used that separate right-column Google option, and that right column had no terms notice, no privacy policy notice, no hyperlinks, different operative language ("Connect With" as opposed to "By creating an account"), and no indication that the user was signing up or creating an account. *Id.* The court did not direct the parties to arbitration because it concluded that clicking the separate Google "Connect With" button did not manifest assent to

terms "buried in a different section" of the page and tied to a different account-creation method. *Id.* at *9-10. (Appendix Figure 2: Sign-Up Page.)




The Website's sign-up screen has none of those problems. Plaintiffs concede that the Website's sign-up options were not separated into different columns (Opp. at 7), and the notice appeared in the same modal directly below the Google sign-up option.

Plaintiffs also argue that Defendants failed to show "what a user who clicks on the 'Sign up with Google' option would have seen after clicking that button." (Opp. at 3.) This misses the point. Under *Berman*, what matters is whether the user was "explicitly advised that proceeding will constitute agreement to the terms." 30 F.4th at 857. The Website's sign-up screen did exactly that—*before* the click. Once Plaintiffs clicked "Sign up with Google," they manifested assent. The post-click Google authentication flow is irrelevant, just as a user's failure to read the hyperlinked

terms does not defeat assent. *See Cody v. Fullbeauty Brands, Inc.*, 2025 US Dist LEXIS 195027, at *11-12 (CD Cal Aug. 26, 2025). The closer visual comparator is found in the *Rainey* case. There, the user could sign up by entering an email address or by linking an account, including Google. Immediately below the sign-up buttons, the screen stated that "[b]y signing in or signing up," the user agreed to Rover's Terms of Service and Privacy Policy, with the terms hyperlinked. *Rainey v. A Place for Rover, Inc.*, 2022 U.S. Dist. LEXIS 208799, at *2 (C.D. Cal. July 18, 2022).




*Rainey,* 2022 U.S. Dist. LEXIS 208799, Declaration of Jenna White Ex. A, ECF No. 20-1.

The court compelled arbitration because the notice was conspicuously located directly below the account-creation button, the terms stood out as hyperlinks, and the plaintiff's account creation and website use objectively manifested assent. *Id.* at *6-7. The same reasoning applies here because Plaintiffs selected the Google sign-up option directly above a notice that signing up constituted agreement to the Website's Terms and Conditions.

Other decisions that involve Google SSO reach the same conclusion. In *Moyer v. Chegg, Inc.*, the plaintiff argued that she clicked a Google icon, but did not click the "Create account" button, did not see the terms, and did not know Chegg was trying

to bind her to arbitration. 2023 U.S. Dist. LEXIS 128352, at *16 (N.D. Cal. July 25, 2023). The court rejected that argument because Chegg's evidence showed that, even if the plaintiff used Google, account creation required clicking "Create account" alongside a disclosure stating that doing so constituted agreement to Chegg's terms. *Id*. at *17-19. Likewise, in *Kohler v. Whaleco, Inc.*, the court enforced terms where the registration prompt offered sign-in through Google, Facebook, and Apple and displayed a notice below those options stating that, by continuing, the user agreed to Temu's Terms of Use and Privacy Policy. 757 F. Supp. 3d 1112, 1119-20, 1124-25 (S.D. Cal. 2024). This confirms the same principle: a Google sign-up option does not defeat assent where the sign-up page tells the user that continuing or signing up means that the user agrees to the hyperlinked terms.

These cases foreclose Plaintiffs' attempt to make contract formation turn on subjective intent or recollection. The relevant inquiry is objective manifestation of assent, and courts enforce online terms where the user had constructive notice and proceeded with the account-creation action. A party's failure to read the terms, click the hyperlink, or remember the sign-up screen does not defeat contract formation. Thus, if the Court concludes (as it should) that Plaintiffs created accounts on the Website through Google SSO, Plaintiffs cannot avoid arbitration by claiming they did not subjectively understand that by signing up they agreed to the Terms.

**B. Other Courts Have Enforced the Same Arbitration Provision.**

Recent California decisions involving the exact same Website and Terms confirm this result. Just last month, after Plaintiffs filed their opposition, Judge Calabretta in the Eastern District of California addressed this exact issue. *M.S. v. Aylo Freesites, Ltd*, No. 2:25-cv-01139-MJC-JDP, 2026 U.S. Dist. LEXIS 118121 (E.D. Cal. May 27, 2026) (enforcing the mandatory arbitration provision under identical Terms). The court concluded as a matter of law that the Website's sign-up page gave reasonably conspicuous notice where the notice appeared in the black sign-up box near the sign-up button and the orange "Terms and Conditions" text was a clear

hyperlink. *Id*. at *8-13. The court rejected similar arguments to those Plaintiffs raise here: that the page's adult imagery, font size, color, and presentation somehow undermined notice. *Id*. at *11-13. Plaintiffs cite no authority reaching a contrary result on comparable facts.

Plaintiffs' attempt to distinguish *Doe v. Aylo Holdings S.a.r.l.*, No. 2:24-cv-03267-MCS-JPR, 2025 U.S. Dist. LEXIS 98282 (C.D. Cal. Feb. 24, 2025), likewise does not alter the outcome. Plaintiffs note that the plaintiff in *Doe* admitted she had an account on the Website and initiated arbitration. (Opp. at 8.) But Plaintiffs here also created accounts. *Doe* is instructive because Judge Scarsi enforced the same Terms' delegation clause and directed arbitration of claims against the same Website. See *Doe*, 2025 U.S. Dist. LEXIS 98282, at *13-17.[1]

### C. Regardless of How the Accounts Were Created, the Plaintiffs Manifested Assent to Arbitration.

Even if the Court were to accept Plaintiffs' factual premise—that they did not use Google SSO to create these accounts—their legal argument still fails.

There can be no reasonable dispute that accounts exist and were created with each of the named Plaintiff's email addresses. There is also no dispute that accounts can be created only by two methods: (1) submitting an email and creating a password or (2) signing up through Google. (Sabbagh Decl. ¶¶ 5-7.)

Therefore, even if Plaintiffs did not create an account through the Google SSO process, they could have only otherwise created an account through method (1) (email-and-password registration). In that event, they encountered the same sign-up screen and the same notice: "By signing up, you agree to our Terms and Conditions."

[1] Plaintiffs' suggestion in footnote 6 that they may later seek leave to substitute class representatives is irrelevant to the pending motion. (Opp. at 9 n.6.) No motion to amend is before the Court, and Plaintiffs' hypothetical future request has no bearing on whether Plaintiffs Adair and Henderson agreed to arbitrate. Defendants will address any such motion at the appropriate time.

For the reasons discussed above and in Defendants' opening brief, a user who "signs up" by either method manifests assent to the Terms. *See Huynh*, 814 F. Supp. 3d at 1149 (C.D. Cal. 2026) (enforcing sign-in wrap where the terms were "readily apparent" and the user was advised that signing up or logging in agreed to the terms); *Cody,* 2025 US Dist LEXIS 195027, at *11 (enforcing online terms where the hyperlink appeared immediately above the purchase button and the user was advised that placing an order and/or creating an account agreed to the terms).

Consistent with those analogous decisions and those from courts that have enforced the Website's layout and arbitration clause, Plaintiffs' claims here should also be compelled to arbitration—whether they created their accounts via Google SSO or through the email-and-password method.

## CONCLUSION

For the foregoing reasons and for those set forth in Defendants' opening papers, Defendants respectfully request that the Court: (1) compel Plaintiffs Adair and Henderson to arbitrate their individual claims; (2) stay this action pending the completion of arbitration; and (3) grant such other relief as the Court deems just and proper.

DATED: June 30, 2026

Respectfully submitted,

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY, AND POPEO, P.C.

By: */s/ Christopher A. Lisy*
Christopher A. Lisy (admitted *pro hac vice*)
Seth R. Goldman (admitted *pro hac vice*)
Nada I. Shamonki
Nadia A. Zivkov

*Attorneys for Defendants Aylo Freesites Ltd. and 9219-1568 Quebec Inc.*

**LOCAL RULE 11-6.2 CERTIFICATION**

The undersigned, counsel of record for Defendants, certifies that this brief contains fewer than 4,000 words, which complies with the applicable word limit.

Date: June 30, 2026

*/s/ Christopher A. Lisy*
Christopher A. Lisy